HAWTHORNE, Justice.
 

 Plaintiff, Earl M. Ellis, instituted this suit to recover from the Acadia Parish School Board the sum of $17,990, with legal interest from date of judicial demand until paid, under Act No. 250 of 1924, which provides that any owner or other person letting or leasing out land to be occupied and cultivated on a crop-share basis or for a money consideration, who fails or refuses to permit the lessee to occupy or cultivate the premises leased, shall be responsible to said lessee for the market value of the crop that could have been grown on the lands leased or on lands located in the immediate vicinity; or, in the alternative, to recover the sum of $14,207, the profit of which plaintiff alleged he was deprived and the expenses he was obliged to incur because of the failure of the School Board to deliver possession of the premises allegedly leased for the crop year 1942.
 

 To plaintiff’s petition the defendant, Acadia Parish School Board, filed an exception of no cause or right of action, which was tried and overruled by the district court. Defendant then answered, with full reservation of its rights under the exception theretofore filed, and before trial on the merits objected to all offerings and all testimony on the trial for the reason that the exception of no cause or right of action should have been sustained.
 

 After trial on the merits, the district court rendered judgment in favor of plaintiff in the sum of $6446, with interest and costs, which amount the court found to be the market value of the crop that could have been grown on the land in the year 1942, less water rent, land rent, and the cost of producing, harvesting, and hauling the crop to market.
 

 From this judgment the defendant, Acadia Parish School Board, appealed to this court. Plaintiff, Earl M. Ellis, answered the appeal, praying that the judgment of the trial court be increased to the sum of $17,669.04, with interest and costs.
 

 Plaintiff in his petition alleged that on July 12, 1941, the Acadia Parish School Board at a regular meeting, by motion regularly passed, agreed to lease unto petitioner a farm situated in the Parish of Acadia, State of Louisiana, described as
 
 Section 16,
 
 Township 11 South, Range One East, in the Sixth Ward of that parish, and authorized the superintendent, S. D. Pollard, to execute a lease of said land to the peti
 
 *34
 
 tioner; that petitioner was advised by the parish superintendent and members of the board that a written contract of lease would be prepared and executed later; that the contract of lease was prepared in writing by S. D. Pollard, parish superintendent of schools, and was duly executed on December 16, 1941, in duplicate by Pollard for the School Board and by petitioner, a copy of this lease being attached to, and made part of, the petition.
 

 The lease, which is attached to the petition, discloses that S. D. Pollard, as treasurer of the School Board of the Parish of Acadia, executed and signed a lease to plaintiff, Earl M. Ellis, covering the sixteenth section of land for a term from December 1, 1941, to December 1, 1942, the consideration being one-sixth of the rice crop produced and one-third of the highland crops produced (cotton, corn, etc.).
 

 Petitioner further alleged that in the early part of December, 1941, he began moving his farm machinery, tools, and implements to the leased premises but was denied possession thereof by two individuals who had raised a crop on this land during the year 1941; that, upon being denied possession of the property or admittance thereto, he so informed the officials of the School Board, who told him that the lease to the two individuals who had denied him the right of possession had expired, and that it, the School Board, would take legal steps to have these individuals ousted and evicted and would deliver possession of the property to petitioner; that, on being so advised by the School Board, he moved his agricultural machinery, tools, and implements from a farm in the Parish of Jefferson Davis and stored a portion of them in Crowley, to await the action of the School Board to put him into possession of the sixteenth section of land described in the lease; that the School Board gave notice to the occupants of the premises to vacate the property, and, they having failed to do so, instituted eviction proceedings in the district court of Acadia Parish; that after trial of the eviction proceedings judgment was rendered therein on January 26, 1942, in favor of defendants, occupants of the premises, and against the Acadia Parish School Board, for the reason that the School Board, after having agreed to lease said land to petitioner herein, had negligently permitted the lease to the two occupants of the premises to be renewed by re-conduction for a term of one year from June 30, 1941; that, soon after this judgment was rendered by the district court, the School Board informed petitioner that it would not be able to deliver to him possession of the leased premises.
 

 Petitioner then in detail set forth the amount and kinds of rice that would have been produced under the terms of the lease from the leased premises in the year 1942 and the market value thereof, and alleged that, because of the failure of the defendant to place him in possession of said land, the School Board was responsible in damages
 
 *36
 
 to petitioner for the market value of the 1942 crop that could have been grown on the land leased of on lands located in the immediate vicinity, and that he was entitled to judgment in this amount, less land rent of one-sixth of the crop and water rent of one-fifth of the crop, which amounted to $17,990. He prayed for judgment in this sum.
 

 In support of his alternative demand, petitioner alleged that the School Board was liable to him in damages for the profit of which he was deprived and the expenses he was obliged to incur because of the School Board’s failure to deliver to him possession of said land, which damages he itemized in detail, alleging them to be $14,-207, and in the alternative he prayed for judgment in this amount.
 

 Paragraph 1 of Section 30 of Act No. 100 of 1922 reads as follows:
 

 “Parish school boards shall have authority to rent sixteenth section lands, or lease the mineral rights of same by resolution of the board and without the authority of a vote of the electors of the township in which such lands are located. All funds realized from the rent of sixteenth sections, or lease of mineral rights of sixteenth sections shall be credited to the current school funds of the parish.” •
 

 . Plaintiff’s petition clearly discloses that it was under the above quoted provisions of Act No. 100 of 1922 that the lease to him was granted by the School Board, for he specifically alleged that the Acadia Parish School Board at a regular meeting by motion regularly passed agreed to lease to him the sixteenth section of land described in his lease for agricultural purposes, and authorized the superintendent, S. D. Pollard, to execute the lease, and that the lease was so executed in duplicate on December 16, 1941; or, stated differently, that the Parish School Board had authority to rent sixteenth section lands for agricultural purposes by mere resolution of the board and without the authority of a vote of the electors of the township in which the land is located. He contends that Section 30 of Act No. 100 of 1922, granting to school boards the authority to lease sixteenth section lands for agricultural purposes, is still in full force and effect, and that this section was in no way repealed by Act No. 170 of 1940.
 

 Act No. 170' of 1940 is an act to allow the State and its departments, agencies, subdivisions, and institutions to lease lands of which they have title, custody, and possession for trapping, grazing, hunting, agricultural, and other legitimate purposes whatsoever other than for oil, gas, and other mineral purposes and development, and to provide the procedure to be followed and the terms, conditions, etc., of the leases so granted. Section 1 defines, for the purposes of the act, the term “lessor”, as follows : “* * * the term ‘Lessor’ shall be held to refer to and include the Registrar of the Land Office, the Commissioner of Conservation, and
 
 any and all other branch
 
 
 *38
 

 es, departments or agencies of the State of Louisiana,
 
 or any school district, levee district, drainage district, municipal or parochial subdivision of this State, or any penal charitable institution, or State University or College, or
 
 other itnit or institution, deriving its authority and powers from the sovereignty of the State of
 
 Louisiana.” (Italics ours.)
 

 Section 2 reads as follows:
 

 “That any ‘lessor’ as herein defined, shall have the power through its governing authority to lease for trapping, grazing, hunting, agricultural or any other legitimate' purposes whatsoever, other than for oil, gas or other mineral purposes and development, any lands of which the lessor has title, custody or possession.”
 

 The act further provides, among other things, that before executing any lease the lessor shall cause to be published in the official journal of the parish in which such land is located an advertisement for a period of not less than 15 days, setting forth the description of the land to be leased, the time bids therefor will be received, and a short summary of the terms, conditions, and purposes of the lease or leases to be executed; that at the day and hour mentioned in such advertisements for the consideration of the bids for said lease or leases, which bids shall be secret sealed applications, they shall be publicly opened by the lessor at its office, and such lessor is vested with full power to accept only the highest bid submitted and to execute any lease or leases so granted under such terms and conditions as it may deem proper or as otherwise provided in the act, all leases granted to be executed in triplicate, one copy to be furnished to the lessee, one to be recorded in the conveyance records of the parish in which the land lies, and one to be retained in the records of the lessor.
 

 The act contains certain provisions for restrictions on the area to be leased and the terms of the lease, and for cancellation of leases for non-payment of rent, and other provisions which we do not deem it necessary to discuss or analyze.
 

 Section 12 of the act provides that all laws or parts of laws in conflict therewith are thereby repealed.
 

 Plaintiff’s petition discloses that the lease involved in this case was executed in compliance with Act No. 100 of 1922, that is, merely by resolution of the School Board, rather than under the procedure as set forth in Act No. 170 of 1940. In the trial judge’s conclusions and findings in this case, under the minute entry of September 8, 1945, we find the following statement: " * * * The court is of the opinion that Section 30 of Act No. 100 of 1922 is unaffected by Act No. 170 of 1940, and that the school board was therefore authorized to lease by simple resolution of the board.” This is the only reason shown by the record as to why the-trial judge overruled the exception of no cause or right of action.
 

 
 *40
 
 In our opinion, Act No. 170 of 1940 is broad enough to, and does, include school boards under the provisions of Section 1 defining the term “lessor,” and also includes the leasing of sixteenth section lands for agricultural purposes under the plain provisions of Section 2, both sections being quoted hereinabove. Therefore, for a valid lease to exist for such purposes the provisions of the act must be complied with, as this act repealed Section 30 of Act No. 100 of 1922 insofar as the 1922 act gave to school boards the authority to lease the sixteenth section lands for agricultural purposes by mere resolution of the school boards.
 

 School boards possess only delegated powers defined by statutes and are not free to act as individuals and can do no act 'beyond the special powers delegated to them. Since the contract of lease in this case was made pursuant to the provisions of Section 30 of Act No. 100 of 1922, as admitted in appellee’s brief and as disclosed in the petition, and therefore not in accordance with the procedure set forth in Act No. 170 of 1940, the lease is null and void, and the exception of no cause or right of action filed by defendant herein should have been sustained. Broussard v. Verret et al., 43 La.Ann. 929, 9 So. 905; Whitney v. Parish of Vernon, 126 La. 13, 52 So. 176; State v. Louisiana Cypress Lumber Co., 144 La. 559, 80 So. 722; Murry v. Union Parish School Board, La.App., 185 So. 305.
 

 Plaintiff-appellee contends that Act No. 100 of 1922 is a special statute, Section 30 of which has to do with the leasing of sixteenth section lands for agricultural purposes, and was not repealed by Act No. 170 of 1940, a general statute dealing with the leasing of all lands owned by the State or its subdivisions and requiring certain advertisement before a lease can be made pursuant thereto. In support of this contention, he cites the case of State v. Humble Oil & Refining Co., 195 La. 457, 197 So. 140, 144.
 

 In that case the State contended that Act No. 93 of 1936, as amended by Act No. 80 of 1938, a general statute prescribing the manner by which public lands belonging to the State may be leased for the production of oil, gas, and other minerals, divested the school boards of their authority to lease sixteenth section lands for those purposes under Section 30 of Act No. 100 of 1922; or, in other words, that Section 30 of Act No. 100 of 1922 had been repealed by Act No. 93 of 1936, as amended by Act No. 80 of 1938.
 

 Under the facts in that case this court reached the conclusion that the administration and control vested by Act No. 100 of 1922 in the school board over the sixteenth section lands involved in that suit were not affected by the adoption of Act No. 93 of 1936 or Act No. 80 of 1938, but in doing so pointed out that a special legislative act may by implication be repealed by
 
 *42
 
 a general legislative act, the question of whether it has been so repealed being one of legislative intention, and that it was not the intention of the Legislature that the 1936 or the 1938 act should repeal Section 30 of Act No. 100 of 1922, reasoning thus:
 

 “For more than one hundred years it has been the settled policy of this State, as reflected in various constitutional and statutory provisions, to treat sixteenth section lands as separate and distinct from all other State lands and to place them under the control of the school authorities. Had the legislature, in adopting the Mineral Board acts, intended to change this well recognized policy and to vest jurisdiction of those lands in the Mineral Board, it is unlikely that it would have left open for construction its intention to do so. The Constitution provides that the revenues derived from sixteenth section lands shall be segregated and dedicated to the use of the public schools. There is no provision either in Act 93 of 1936 or Act 80 of 1938, for the segregation and dedication of such revenues, and in order to hold that the effect of the acts is to repeal Section 30 of Act 100 of 1922, the Court would of necessity have to hold, also, that certain provisions of the repealing acts are unconstitutional. It would seem to be obvious that before the legislature intended to make such a drastic change in public policy, a change which would have the effect of placing school lands in the same class as other public lands and to vest the control of such lands in the Mineral Board, the legislature, in compliance with the mandate of the Constitution, would have provided that the revenues derived from the sixteenth section lands should be segregated and used solely for school purposes.”
 

 Clearly this reason as given by the court in that case does not apply to Act No. 170 of 1940, as this act does not have the effect of divesting the school boards of authority to lease sixteenth section lands for agricultural purposes or of taking the revenues derived therefrom from the schools. The object and intent of the Legislature in adopting Act No. 170 of 1940 was to give all persons a chance to bid on leases of the public lands, to prevent boards and other authorities from favoring one person over others, and to produce to the various agencies of the State named therein larger revenues by requiring competitive bidding for the leases. We know of no reason, and none has been called to our attention, why this act should not apply to a lease given by a school board covering sixteenth section lands.
 

 Defendant-appellant in brief and in argument before this court urges that the exception of no cause or right of action is well founded and should now be sustained. We agree fully with this contention.
 

 For the reasons assigned, the judgment appealed from is reversed, defendant’s exception of no cause or right of action is sustained, and plaintiff’s suit is dismissed; plaintiff-appellee to pay all costs.