100 So.2d 883

Reginald O. BELL, Jr., et al.

v.

CITY OF SHREVEPORT et al.

No. 43699.

Feb. 10, 1958.

Rehearing Denied March 17, 1958.

Caddo Parish, seeking judgment decreeing the nullity and illegality of the City's Ordinance No. 79 of 1956, under which certain local improvement assessments were made, and ordering the cancellation and erasure from the Parish mortgage records of any and all assessments against them or their property made pursuant to said ordinance.

The City Council of the City of Shreveport, availing itself of the provisions of R.S. 33:3301 through 33:3316, as amended (covering the subject of municipal street improvements at the instance of the governing authority), by Resolution adopted on June 14, 1955, resolved that notice be given of intention to pave Jewella Avenue from Greenwood Road to Lakeshore Drive, the said work to be done under private contract awarded after competitive bidding, and the total expenditure to be paid in the following proportion: by the owners of real property abutting such improvements, an amount not to exceed two-thirds of the cost of a 36 foot wide strip of paving, and by the City, the remaining cost. The notice of intention, containing a verbatim copy of the Resolution as adopted by the City Council, was duly published,[1] and the City Council at its regular meeting of July 12, 1955,

Charles M. Peters, Shreveport, for plaintiffs-appellants.

William L. Murdock, Robert E. Eatman, Shreveport, for defendant-appellee.

FOURNET, Chief Justice.

The plaintiffs, citizens and taxpayers of the City of Shreveport, are appealing from a judgment dismissing their suit against the City and against Dozier B. Webster, the Clerk of Court and Ex-Officio Recorder of

1. R.S. 33:3302 declares: "Any municipality taking advantage of this Sub-part, shall adopt a resolution giving notice of its intention to make the proposed improvements, which notice shall contain a general description of the improvements contemplated, the manner of paying for them, and shall state whether the improvements shall be constructed under private contract or undertaken by the municipality. The notice shall be signed by the authorized officer of the municipality, and shall contain substantially all things set forth in the resolu-

voted to proceed with the improvements; at the same meeting, by resolution, the City Engineer was authorized and instructed to prepare plans and specifications for paving the project and to do all necessary engineering work; the City Attorney was instructed to handle legal matters pertaining thereto; and, by another resolution, certain plans and specifications for the paving, already prepared by the City Engineer and on file at the office of the Secretary-Treasurer of the City, were considered, were deemed adequate and were approved, and it was ordered that the work be constructed in accordance therewith—the Secretary-Treasurer being ordered to advertise for bids. On August 9, 1955, the Council, in meeting assembled, received and opened bids, and these were referred to certain City agencies for tabulating and a report at the next meeting. Thereafter, by Resolution, the lowest bid, in amount of $265,268.69, was accepted; a contract was executed un-der date of August 23, 1955. The work was promptly commenced, the project was prosecuted to completion, and the engineer's report setting forth completion and total costs was rendered and approved by the City Council on May 22, 1956; it indicated that a cost of $117,038.47 was to be borne by the abutting property. Ordinance No. 79 was then adopted, in which there was levied a special assessment (on a front foot basis) in specific amounts, totaling the said sum, against the abutting property and its owners, and a copy was filed with the Clerk of Court of Caddo Parish, who was ordered to record same in the Mortgage Records.[2] This suit followed.

■ The trial judge, in a well reasoned opinion, correctly recognized the law to be that statutes conferring upon municipalities the authority to impose special or local assessments, such as the one under which the City of Shreveport proceeded, are in

tion, and shall set forth further that the authority ordering the giving of notice will, in open session, at the date and at the hour and place named, hear all objections to the proposed improvements, the manner of paying for them, and the manner in which the improvements shall be made. After hearing and passing on the objections, the governing authority may order the improvements constructed in the manner hereinafter provided. The notice of intention shall be published once a week for three consecutive weeks, the first publication being not less than fifteen days before the date fixed for the hearing of objections. The notice shall be published in a newspaper published in the municipal-ity, or if there be none, then in some newspaper published in the parish where the municipality is located, or by posting in three public places, within the corporate limits of the municipality, fifteen days before the date of the hearing."

2. According to the provisions of R.S. 33:-3306, " * * * A certified copy of the ordinance levying the local or special assessments on the real estate shall be filed with the clerk of court in the parish in which the municipality is situated, who shall forthwith record the same in the mortgage records of the parish, and when so filed and recorded, shall operate as a lien and privilege against all real estate therein assessed. * * * "

derogation of common right and therefore, as a general proposition, are to be accorded a strict construction, and that failure to comply with those requirements which are sacramental is fatal to the validity of the acts of the municipality; but he also pointed out that where a statute is substantially followed, mere informalities and irregularities in the procedures employed by the municipality in attempting to comply with such statutes do not necessarily render the whole null and void—this being in fact conceded by counsel for the plaintiffs, but it is their contention that the alleged non-compliances of the City in carrying out the project were so gross as to invalidate the City's power and authority to levy the assessments in this case. In resolving that issue, the trial judge held, and we think properly so, that there was substantial, if not literal, compliance with the require-ments of the applicable statute, and that plaintiffs are not entitled to the relief sought.

The plaintiffs-appellants, in complaining of the trial judge's conclusions,[3] assign as error (a) his holding that the notice of intention to undertake the project, as published by the City, complied with R.S. 33:-3302;[4] (b) his holding that the City could accept bids and award a contract based on a "unit price," since the "turnkey" type contract is indispensable to compliance with the mandatory provisions of R.S. 33:3305 and 3306 and a valid assessment for the cost of street improvements against abutting property owners; (c) his holding that the legal phrase "shall forthwith" found in R.S. 33:3305, did not mean "immediately," or "instanter," and therefore a substantial delay by the City Engineer in performing the required act was sufficient com-

3. Counsel for plaintiffs, in brief filed here, state that the facts set out in the petition fall generally into three categories of complaint, "namely: (a) abuse of discretion on the part of the Council of the City of Shreveport, so gross as to constitute a confiscation of plaintiffs' property without due process of law, and so gross as to demand the intervention of the Courts to prevent its exaction; (b) discrimination against plaintiffs, arbitrary and unreasonable in nature, in the expenditure of the public funds voted for this improvement purpose; (c) sacramental failure to comply with the mandatory requirements of the statute under which the improvement was constructed and the assessments complained of here-in, levied." It is also said: "Since the Trial Judge permitted no evidence to support categories (a) and (b) above, this appeal is based on category (c) above and the principles of law set out in syllabus hereto." In the Reasons of the trial judge the contentions set out in categories (a) and (b) were discussed and shown to be without substance, on the basis of rulings of this Court in the cases of Kelly v. Chadwick, 104 La. 719, 29 So. 295; City of Shreveport v. Shreveport Traction Company, 134 La. 568, 64 So. 414; and Palmer v. Mayor and Board of Aldermen of Town of Ponchatoula, 195 La. 997, 197 So. 697.

4. Supra, note 1.

pliance with the mandatory statutory requirement; (d) in refusing to hold that the addition of substantial items of work to the project after the contract was let and work begun constituted work illegally undertaken and completed without any process of competitive bidding as required by R.S. 33:3303–3304, thus rendering illegal any assessment against abutting property.

The plaintiffs' complaint with respect to the notice of intention[5] is that it tended to create the impression that the paving was to be of a width customary on residential streets, i. e., 36 feet, and concealed the fact that the project was to be highway construction, an eight inch thick slab 42 feet wide—thus failing to meet the requirement of R.S. 33:3302. This objection does not impress us. The cited statute requires that the notice of intention to make proposed improvements "shall contain a general description of the improvements contemplated, the manner of paying for them * * *," and we think the trial judge correctly disposed of the matter, observing that in final analysis the plaintiffs are claiming that both the finished width and thickness of the proposed paving must have been contained in the resolution and notice, yet that the statute makes no such requirement, and that no jurisprudence was cited to sustain plaintiffs' position. He also pointed out that at the meeting (fixed as the occasion when the Council would hear, consider, and pass on objections) there were on hand complete and detailed plans and specifications prepared by the City Engineer, so that all interested persons might have detailed information con-

5. Under the caption "Notice To Property Owners" as printed in the Shreveport Journal at the required intervals appeared notice that "The following Resolution was adopted by the City Council of Shreveport on 14th June, 1955 * *

"Be It Resolved by the City Council * * * That notice is hereby given of its intention to pave Jewella Avenue from Greenwood Road to Lakeshore Drive, and to pay for same under the authority and all in accordance with * * * R.S. 33:3301 through 33:-3316 * * *

"The work to be performed contemplates grading, concrete paving, concrete curbing, gutter and sidewalks, storm sewers and pipe drainage.

"The work will be done under private contract, awarded after proper competitive bidding, and the total cost thereof, including street intersections and all engineering and other incidental costs, shall be paid for by the owners of real property abutting such improvements, to the extent of not to exceed more than two-thirds based upon the cost of 36 foot paving width, and the City to pay the remaining cost. * * *

"Be It Further Resolved, that the City Council will meet, in open session, at 10 o'clock A.M. 12 July, 1955, at the City Hall, Shreveport, La., in order to hear, consider and pass upon any and all objections that may be made to the proposed improvements and the manner in which they shall be made, and payment therefor and, if it should so determine, to order such improvements constructed. * * *"

cerning the proposed improvement;[6] and concluded that the City Council had discretion in deciding how much detail concerning the proposed work should be placed in the notice, so long as there was substantial compliance with the requirements of law.

■■ Pursuing further argument, counsel for plaintiffs emphasize that work in this case was let as the result of competitive bids on a unit price basis, and the bids that were invited did not call for a "turnkey job," yet the requirements of the statute can be observed only in the case of a turnkey contract.[7] Counsel assert that the bids on a unit basis in this case initiated a chain of errors which resulted in a reversal of statutory provisions, thus demonstrating that the statute presupposes a turnkey contract and that type only. Noted by counsel is the circumstance that plans and specifications were prepared in advance of the hearing—a necessity if the bidding is to be on a unit basis, and showing, incidentally (it is said), that the City Council had no intention of being influenced by objections —whereas the statute provides that plans and specifications are to be prepared only following a hearing and disposal of objections; and the further circumstance that the certified report of the City Engineer, which should have been required by the municipality "forthwith" upon the award of a contract,[8] was not filed until nine months after the contract was let and more than two months after it was completed. These

6. In passing, the trial judge noted "the anomalous situation * * * that plaintiffs assail the very fact that such plans and specifications were on hand and assert that the fact that they were is evidence that the City Council had already foreclosed their minds and would not have heeded any objections or protests had these plaintiffs presented themselves and offered complaint or protest."

7. It appears from the record that the Engineer's plans and specifications were confected on a unit basis, giving quantity estimates, and bids were required to be submitted on the same basis; e. g., on excavation there was an estimated quantity given, and bids were invited at a given price per cubic yard; on the concrete paving slabs, as well as on curbing and culverts, estimated quantities were given and bids invited at a price per square yard; etc. The invitation for the bids provided that the final cost of the work, either more or less than the estimated grand total, would be determined at the completion of the work when an accurate figure could be ascertained.

8. R.S. 33:3305, as it read at the time of these improvements, declared, in part: "The municipality upon the award of any contract under the provisions of this Sub-part * * * shall forthwith require of the engineer of the municipality a duly certified statement or report, showing in detail, the total cost of the improvements, including street intersections, engineers' and attorneys' fees, and all other expenses incidental to the cost. The report shall also show the amount of the cost chargeable to each lot or parcel of real estate abutting the improvements in proportion that its frontage bears to all of the abutting lots or parcels of real estate to be improved and shall give a brief description of each parcel or lot of real estate with sufficient clearness to identify it; * * *."

contentions are without merit. Nothing is found in the statute that expressly prohibits the unit price type contract nor expressly specifies the turnkey type; and the record contains evidence not only that the unit method of performing public works under private contract is in general use by municipalities, state and federal agencies, and private enterprises, but also that experience has shown this to be a more economical manner of letting private contracts in cases of this kind. Indeed, the record contains no evidence to the contrary. We therefore conclude that the mode of procedure under a unit-price contract constituted a valid exercise of the discretion of the governing authorities to decide whether to let contracts for public improvements on a turnkey or a unit price basis. It follows that the word "forthwith" has a relative significance, because when the statute is read as a whole and its provisions construed the one with the other, the intent is evident that the Engineer shall make the report as soon as he has the necessary information.

█ The final asserted violation of sacramental statutory requirements arises because the total cost of the work exceeded the bid price by some $14,369, due to the addition of items not included in the plans and specifications, nor in the advertisement for bids, the bids accepted, the contract entered into—also said to result from the "unit price" contract. On the basis that there was lack of compliance with the formalities of law requiring all items of work and cost to be determined in a process of competitive bidding, it is contended that the various assessments levied against the abutting property owners bore no relation to the project advertised or authorized by the resolution; that this was fatal to the legality and validity of the City's acts and the whole assessment—but if not to the whole, then unquestionably to the extent at least of these extras. We think that the trial judge properly rejected this contention in its entirety, aptly observing that "the degree of competition in the bidding was not in the estimates the bidders submitted as a total cost figure but was the price bid per unit;" that all bids submitted were on an estimated total cost price; and that "the items which made up the difference between the finally approved total cost and the estimated total bid price consisted of minor and immaterial alterations in the work as it progressed and because of encountering certain obstacles and conditions not originally contemplated."

For the reasons assigned, the judgment appealed from is affirmed.

SIMON, J., absent.