GUIDRY, Judge.
Plaintiff, West Calcasieu Port, Harbor Terminal District[1] (hereinafter referred to as the “Port”) instituted this action for a declaratory judgment seeking to determine whether or not it had a valid contract of lease with the defendant Cajun Marine Services, Inc. (hereinafter referred to as “Cajun Marine”). The lease in question, which the Port had advertised for and accepted bids on, was to cover barge storage or fleeting facilities owned by the plaintiff. Also named as defendants were Alfred A. Devall d/b/a Cal Cam Fleeting Service (hereinafter referred to as “Devall”) and Devall’s Towing and Boat Services, Inc. (hereinafter referred to as “Devall Towing”).[2] Cajun Marine answered generally denying the allegations of plaintiff’s petition and also filed a petition for a writ of mandamus to compel the Port to comply with the terms of the lease contract which allegedly existed between it and the Port. Devall and Devall Towing, as well as the Port filed various exceptions to the petition for a writ of mandamus and at a hearing on June 16, 1976 the petition for mandamus was dismissed as of non-suit. Cajun Marine has not appealed from the latter judgment. Devall and Devall Towing answered the principal suit alleging that the acceptance by the Port of the Cajun Marine bid was *171 illegal and invalid, and that the action of the Port in later rescinding its acceptance of the Cajun Marine bid was proper. On November 18, 1976, after a trial on the merits, the district court rendered judgment declaring that there existed a valid and binding lease between the Port and Cajun Marine. Devall and Devall Towing filed a motion for a new trial. The motion for a new trial was heard on December 16, 1976 and was denied. Devall and Devall Towing have appealed. Neither the Port or Cajun Marine have appealed or answered the Devall appeals.
A review of the facts, the most part of which are undisputed, show that during 1970 the Port purchased property adjacent to the Intracoastal Canal south of Sulphur, Louisiana. Thereafter the Port dredged an inlet along the bank of the canal, the length of which was approximately 1000 feet with an inland width of approximately 300 feet. The dredged area or slip was intended for fleeting, i. e., temporarily parking barges which served the various industries in the Calcasieu area. After completing the dredging operation the Port entered into an agreement with Alfred A. Devall, d/b/a Cal Cam Fleeting Service, for the lease of the slip as a fleeting facility. This agreement, which simply provided for the lease of the slip, granted to the lessee the right of ingress and egress over the Port’s adjacent property. It further provided that the lessee had the right to make improvements at the slip and to maintain a movable office structure and watchman’s tower. In regards to the improvements the evidence reveals that Devall did some road work in the area as well as having installed “dead man” posts around the slip. A “dead man” is two partially buried creosote piling in-, twined with a cable, and is used to secure the docked barges. Devall also supplied trailers for use as offices and a watch tower. As per the agreement Devall could remove these movable structures at the termination of the lease.
The lease between Devall and the Port, which had a stated term of five (5) years, was entered into on May 18, 1971. The consideration to be paid by the lessee was a sum of money equal to forty percent (40%) of the gross revenues derived from all charges for the storage of barges or other vessels docked at the slip.
Prior to the expiration of the lease with Devall, Olaf Jacobsen, the Port Director, testified that he discussed with Devall the fact that the fleeting facility would be put up for bids when his lease expired on May 18, 1976. Devall at this time agreed to assist Jacobsen in preparing the bid instructions and specifications. Both Jacobsen and Devall indicated that they thought the bidding was a mere formality and that Devall would continue leasing the facility. Jacob-sen admitted telling Devall that he should bid just as he had done before, i. e., 40% of gross revenue. Bid instructions were prepared setting forth the minimum requirements as to the term, rental and other conditions of the lease.
On January 7, 1976 the board commissioners of the Port met in a regular meeting. The commissioners present were George A. Tuttle, G. E. Frenzel, W. L. Henning, and John A. Castillow. Also present at this meeting were Olaf Jacobsen and Glenn James, the Port attorney. At this time the board requested that Glenn James advertise the barge storage facilities for bid. On January 28th, February 4th, and February 11, 1976 a request for bids appeared in the Southwest Builder, a newspaper published weekly in Sulphur, Louisiana. Although the evidence is not clear it also seems that the advertisement appeared in the Lake Charles American Press on January 24th, 31st, and February 7, 1976. The advertisement, which related to the request for bids for proposals to lease the barge storage facility directed that the bids would be received at 1521 Cypress Street, Sulphur, Louisiana, at 2:00 p. m. on April 6, 1976. It further provided that bid instructions and specifications listing the minimum requirements for the bids could be obtained from the Port Director, Olaf Jacobsen. We here note that the bid instructions provided that the bids were to be received by April 16, 1976.
*172 The evidence shows that Devall Towing prepared a bid which was thereafter picked up by Olaf Jacobsen some three or four weeks prior to April 6,1976. Olaf Jacobsen admitted that he knew the contents of the Devall Towing bid. Cajun Marine presented its bid at the meeting on April 6, 1976.
At 2:00 p. m. on April 6, 1976 the Port’s board members met in regular session. Commissioners present at the meeting included George Tuttle, John A. Castillow, Tony Palermo and Gordon E. Frenzel. Absent was commissioner William L. Henning. Also present were Olaf Jacobsen, Glenn James, and C. J. Fontenot of Cajun Marine. Alfred A. Devall was not present at the meeting. After discussing other matters it was moved that bids on the fleeting facility be opened. Two bids had been received, one by Cajun Marine and the other by Devall Towing. The two sealed bids were open and read aloud to the board members. The first bid opened was from Devall Towing who bid 40% of the gross revenues as a rental for the facility. The second bid was from Cajun Marine, who bid 56% of the gross revenue as a rental for the facility. Attached to the Cajun Marine bid was some 14 letters of reference from various financial institutions, as well as from companies in the oil and gas and transportation business.
We here note that the obvious difference in the two bids is the percentage of gross revenues to be paid as a rental. The bid instructions had designated that the minimum rental would be 40% of the gross revenues derived from charges for the storage of barges. The bid instructions also set forth several other requirements to be met by all bidders. To summarize the other requirements included: (1) A minimum 5 year term; (2) Minimum storage charge per day for barges; (3) Medium size drag line to be kept on premises; (4) Availability of a tow boat; (5) Employment of at least three shore men; (6) 35 H.P. tractor to be kept on premises; (7) Maintain an office on the premises; (8) Execute a hold harmless agreement in favor of lessor; (9) Carry indemnity insurance of not less than $100,-000.00/$300,000.00 for personal and property damage; (10) Complete and true records of all gross revenues, and permission to allow lessor’s representative to examine records; and (11) Preparation of a monthly statement of gross revenues on the 10th of each month, at which time lessee shall pay to lessor the percentage rental for the preceding month.
The bid of Devall Towing and Cajun Marine both guaranteed compliance with the above requirements.
After the bids were open and read Tony Palermo moved that the board accept the Cajun Marine bid of 56%. The motion was seconded by George Tuttle and after a majority vote it passed. The commissioners next met on April 13, 1976 for a regular scheduled meeting. The minutes of that meeting reflect that the Port Director, Olaf Jacobsen, reminded the commissioners that he had previously advised that the bids for the fleeting facility should have been taken under advisement. The board took no action in this regard. The commissioners again met on May 4, 1976 at which time W. L. Henning moved that the board rescind the motion passed at the April 6,1976 meeting which accepted the bid of Cajun Marine for lease of the fleeting facility. A discussion by the board members indicated that some members felt that they acted hastily in accepting Cajun Marine’s bid and that the matter should have been taken under advisement. Henning’s motion to rescind the acceptance was seconded by G. E. Fren-zel and after further discussion the Board President, John Castillow voted to break the tie in favor of Henning’s motion. The board then unanimously passed a resolution that its attorney, Glenn James, seek a court opinion as to the validity of its action in rescinding its acceptance of the Cajun Marine bid.
At the trial level and on this appeal, appellants contend that the action of the Port in accepting the bid of Cajun Marine was illegal, null and void because the applicable statutory requirements for the leasing of facilities owned by the Port were not complied with.
*173 There are two public lease laws in Chapter 10 of LSA-R.S. Title 41. Part I, LSA-R.S. 41:1211-1221, is entitled “LEASES FOR GENERAL PURPOSES”. Part II, LSA-R.S. 41:1261-1269, is entitled “LEASES WITH RIGHT TO ERECT STORAGE AND TRANSPORTATION FACILITIES”.
At the trial of this matter Cajun Marine contended that the Public Leasing Law, Part I “Leases for General Purposes” and Part II, “Leases with the Right to Erect Storage and Transportation Facilities” were inapplicable. Alternatively, Cajun Marine contended, as well as Devall and Devall Towing, that Part I was inapplicable because of LSA-R.S. 41:1217(C) which provides:
“C. The provisions of this section shall not apply to port authorities of this state.” (Emphasis ours)
The trial court found it was clear from the use of the word “section”, rather than “part”, that the legislature intended only LSA-R.S. 41:1217 would not apply to port authorities, and that the remainder of Part I of Chapter 10 of Title 41 applied to leases granted by such bodies. The trial court in concluding that Part I of Chapter 10 of Title 41, rather than Part II of the same, was applicable to the instant matter stated thusly:
“At first blush it would seem that the leasing provisions of Part II of said Chapter 10 would be more applicable to the subject lease than Part I, because of the former’s reference to “storage and transportation facilities”. However, this court believes that Part I must be applied to all leases granted by the plaintiff, because of the conflict between LSA-R.S. 41:1266 and LSA-R.S. 34:2104 as to the maximum term of such leases. Also, it is difficult to see how the State Department of Wildlife and Fisheries can have any concern with the type of leases that may be granted by the plaintiff. This seems to be the case as to leases executed under Part II.
For these reasons, the court concludes that LSA-R.S. 41:1211 — 1221 is applicable to the lease involved in this suit.”
Although no issue is raised on appeal regarding the applicability of Part I, LSA-R.S. 41:1211-1221, we nevertheless, after reviewing the trial court holding, agree with its finding in this respect.
Devall and Devall Towing do not contest the applicability of Part I of the statute but contend that the trial court erred in finding that the requirements of the statute had been met by the Port. In particular they argue LSA-R.S. 41:1214 has not been complied with in that the lessor did not publish in the official journal of the Parish a description of the land to be leased; that the bid of Devall Towing was not completely secret; and, that the time in the published advertisement for receiving the bids was at variance with the bidding instructions. Secondly, Devall and Devall Towing contend that the trial court erred in finding an executory contract of lease between the Port and Cajun Marine; and, thirdly, the trial court erred in failing to recognize the legal right of the Port to reject the bid of Cajun Marine as provided in LSA-R.S. 41:1215.
In considering the defendant’s first contention we observe, as hereinabove mentioned, that the terms and conditions under which a public agency may lease property of the state is set forth in LSA-R.S. 41:1211 et seq.l LSA-R.S. 41:1211 defines as a “lessor” all departments or agencies of the state, or any other unit deriving its authority and powers from the state. LSA-R.S. 41:1212 permits the agency to lease the property over which it has title for “any legitimate purpose whatsoever . . . LSA-R.S. 41:1214, which grants the agency authority to initiate lease negotiations, provides:
“If the lessor determines that the lands in question may be leased, the lessor shall publish an advertisement in the official journal of the parish where the land is located setting forth a description of the land to be leased, the time when bids therefor will be received, and a short summary of the terms and conditions and purposes of the lease to be executed; provided that if the lands are situated in two *174 or more parishes the advertisement shall appear in the official journals of all parishes in which the lands are located. The advertisement shall be published for a period not less than fifteen days and at least once a week during three consecutive weeks. The lessor may also send notices to those whom it may think would be interested in submitting bids for the leases.
The lessor may on its own initiative advertise for bids for any lease as provided herein, but without application therefor. The applications and bids provided for in this part shall be secret, sealed applications and bids and shall be forwarded through the United States mail to the lessor at its domiciled address.
The advertisements in accordance with this section shall constitute judicial advertisements and legal notices within the contemplation of Chapter 5 of Title 43 of the Louisiana Revised Statutes of 1950.”
As enunciated in Ellis v. Acadia Parish School Board, 211 La. 29, 29 So.2d 461 (La. 1947) the purpose of the Public Lease Law is namely:
“to give all persons a chance to bid on leases of the public lands, to prevent boards and other authorities from favoring one person over others, and to produce to the various agencies of the State named therein larger revenues by requiring competitive bidding for the leases. . ."
After reviewing the record in this matter we find the evidence reasonably supports the trial court’s finding that the Port substantially complied with all the requirements of LSA-R.S. 41:1214. Furthermore, we are of the opinion that to hold otherwise would be to completely thwart the purpose for which the Public Lease Law was enacted.
The trial judge in disposing of appellant’s first contention stated in his reasons for judgment as follows:
“Mr. Devall’s next complaint concerns the sufficiency of the description of the land to be leased in the advertisement, which is simply, “ , . . the barge storage facility on the property of the West Cal-casieu Port, Harbor & Terminal District on the Introacoastal (sic) Canal, Calcasieu Parish, La. . ”. Section 1214 requires the advertisement to set forth “ . . .a description of the land to be leased. . . . ”, but there is nothing therein to indicate the degree of certainty required. There is only one barge storage facility on the plaintiff’s property on the Intracoastal Canal in Calcasieu Parish, and it is obvious that all parties involved in this suit knew where it was located. We are not concerned here with a contest between third parties purchasing or leasing land on the faith of the public records, and no useful purpose would be served by requiring that degree of certainty in land descriptions necessary in such cases. The court concludes that under the circumstances presented the description in the plaintiff’s advertisement was sufficient. .
With regard to the statutory requirement of secrecy, that Mr. Devall’s bid was not entirely secret was due only to his willingness to let it be known. In this court’s opinion a bidder on a public lease or contract cannot proclaim what he is going to bid, place his bid in a sealed envelope to remain unopened until the prescribed time, and then complain that his bid is not secret. It certainly was secret insofar as Cajun Marine was concerned.
Mr. Devall also contends that the procedure followed by the district was defective, because of the conflict between the public advertisement and the written specifications as to the date for receipt of the bids. While this could have given rise to some confusion, it was not shown that Devall’s actions would have been any different whatever date the bids were opened. His bid was submitted voluntarily well in advance of either April 6 or April 16, 1976, and there is no proof in the record that he would have changed his bid had he known the bids were to be opened on April 6, rather than April 16. Since Cajun Marine’s bid was presented only a few minutes before the time ad *175 vertised for the receipt thereof, it seems that it would have been difficult, if not impossible, for Mr. Devall to compute, re-write and submit another bid had he been present on April 6, 1976, after he learned that Cajun Marine was also a bidder.”
In addition to the above appellant raises for the first time on appeal the contention that the lessor, Port, failed to publish an advertisement in the official journal of the parish. We find no merit in this argument.
Defendants point to the affidavit of publication appearing in the record, Exhibit P-9, which indicates that advertisement was published in the Southwest Builder of Sulphur, rather than in the official journal of the Parish, the Lake Charles American Press. Admittedly Exhibit P-9 is the only affidavit of publication introduced into evidence however our review of the record, specifically the bid of Cajun Marine, indicates that the advertisement was also published in the Lake Charles American Press.
In summation, we find the evidence reasonably supports the trial court finding that the Port substantially complied with all the requirements of LSA-R.S. 41:1211-1214. Accordingly, the Port’s actions in this regard were not null and void for it is well settled that when such a statute is substantially complied with mere informalities and irregularities in the procedures employed by one attempting to comply with the statute do not necessarily render the whole proceeding null and void. Bell v. City of Shreveport, 234 La. 607, 100 So.2d 883 (La. 1958); Pleasant v. City of Shreveport, 179 So.2d 911 (La.App. 2nd Cir. 1965).
The two Devall defendants secondly contend that the trial court erred in finding an executory contract of lease between the Port and Cajun Marine. Basically the defendants take the position that there was no lease because all of the details and conditions thereof were not understood and agreed to by the parties; that these were to be negotiated subsequent to the bidding; and that these conditions would then be incorporated into a written lease which was subject to the approval of the board. We find no merit in defendant’s argument.
As set forth hereinabove, it is clear that the written bidding instructions, outlining the minimum requirements for the bids, contemplated all the necessary details and conditions intended by the Port. Furthermore, a comparison of the lease of May 18, 1971, Exhibit P-1, executed between Devall and the Port indicates that the bid instructions were taken almost verbatim from this lease. There is absolutely no evidence to show that the Port intended to add other terms and conditions to the proposed lease or that there was anything essential thereto which was left for the Port to negotiate. Additionally, the bid instructions did not provide that there would be no lease agreement until a written lease was signed by all parties. Based upon these facts the case of Parish of East Baton Rouge v. Industrial Enterprises, Inc., 340 So.2d 367 (La.App. 1st Cir. 1976), relied on by the defendants is clearly inapposite.
In Parish of East Baton Rouge v. Industrial Enterprises, supra, defendant’s bid was accepted by plaintiff on December 12,1973. The bid proposal specifically provided that a written contract was to be executed by the parties. After review of the defendant’s award by several governmental agencies, plaintiff mailed to defendant on September 26, 1974, a written contract for it to sign. At this time defendant informed plaintiff he would not sign the contract because as pursuant to the bid proposal, more than 180 days had elapsed without plaintiff’s acceptance and his offer was no longer viable. The court held that no contract existed between the plaintiff and defendant since the defendant’s offer was firm for 180 days and the acceptance by plaintiff with a written contract almost six months late was certainly not within a reasonable time. The inapplicability of this case to the instant matter is obvious.
Cajun Marine submitted its bid in response to and in conformity with the request for bids and bid instructions of the Port. The Port met at a regular scheduled meeting and at that time accepted by vote of its board the Cajun Marine bid. It is *176 quite obvious that a valid contract of lease was formed. The requirements of LSA-R. C.C. Article 2670, i. e., the thing, price and consent were met.
We next consider Devall’s final contention that the Port had the legal right to reject the bid of Cajun Marine as provided in LSA-R.S. 41:1215. LSA-R.S. 41:1215 provides in pertinent part:
“At the date and hour mentioned in the advertisement for the consideration of bids, the bids shall be publicly opened by the lessor at its office. The lessor shall accept only the highest bid submitted to it by a person or persons who meet all of the conditions of this Part, except in the case where the lessor is a public benefit corporation as authorized and defined in Subsection B hereof. The lessor shall have the right to reject all bids. The lessor may execute any lease granted under such terms and conditions as it deems proper, or as otherwise provided in this Part. . . . ”
There can be no question but that LSA-R.S. 41:1215 does not grant unto the public body the right to reject a bid that has been formally accepted by it. The statute simply provides that the lessor shall accept the highest bid submitted, or reject all bids. To accept the argument advanced by defendants, that the lessor after accepting the highest bid could then reject the same, thereby voiding the confection of a binding lease, would lead to absurd results not intended by the statute. Gurtler, Hebert & Co. v. Orleans Parish School Bd., 251 So.2d 51 (La.App. 4th Cir. 1971); Disposal Systems Inc. v. Calcasieu Parish School Bd., 243 So.2d 915 (La.App. 3rd Cir. 1971).
For the above and foregoing reasons the judgment appealed from is affirmed. The costs of this appeal to be borne by Alfred A. Devall d/b/a Cal Cam Fleeting Service and Devall’s Towing and Boat Service, Inc.
AFFIRMED.

. The West Calcasieu Port, Harbor and Terminal District is a public body which was created pursuant to LSA-R.S. 34:2101.

. Alfred A. Devall is the President and majority stockholder of Devall Towing.