STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

25-568


FARMERS RICE MILLING COMPANY, LLC

VERSUS

LAKE CHARLES HARBOR & TERMINAL DISTRICT
AND SOUTH LOUISIANA RAIL FACILITY, LLC


**********


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2025-56
HONORABLE BOBBY L. HOLMES, DISTRICT JUDGE


**********


CHARLES G. FITZGERALD
JUDGE


**********


Court composed of Shannon J. Gremillion, Candyce G. Perret, and Charles G. Fitzgerald, Judges.


AFFIRMED.

**Claude F. Reynaud, Jr.**
**Jacob E. Roussel**
**Danielle L. Borel**
**Breazeale, Sachse & Wilson, L.L.P.**
**Post Office Box 3197**
**Baton Rouge, Louisiana 70821-3197**
**(225) 387-4000**
**Counsel for Plaintiff/Appellant:**
     **Farmers Rice Milling Company, LLC**

**Todd Clemons**
**Todd Clemons and Associates, APLC**
**1740 Ryan Street**
**Lake Charles, Louisiana 70601**
**(337) 477-0000**
**Counsel for Plaintiff/Appellant:**
     **Farmers Rice Milling Company, LLC**

**Shayna L. Sonnier**
**Peyton F. Pawlicki**
**Veron Bice, LLC**
**Post Office Box 2125**
**Lake Charles, Louisiana 70602-2125**
**(337) 310-1600**
**Counsel for Defendant/Appellee:**
     **Lake Charles Harbor & Terminal District**

**David P. Bruchhaus**
**Jamie C. Gary**
**Lenzi C. Hebert**
**Thomas A. Pousson**
**Mudd Bruchhaus & Keating, L.L.C.**
**517 West College Street**
**Lake Charles, Louisiana 70605**
**(337) 562-2327**
**Counsel for Defendant/Appellee:**
     **South Louisiana Rail Facility, LLC**

**FITZGERALD, Judge.**

The issue before us is whether the trial court erred in sustaining the defendants' peremptory exceptions of no cause of action. Resolution of this issue turns on whether the Lake Charles Harbor and Terminal District (the "Port") is exempt from Louisiana public lease law.

## FACTS AND PROCEDURAL HISTORY

The Port is a political subdivision of the State of Louisiana. It owns and operates the Port of Lake Charles.

South Louisiana Rail Facility LLC ("SLRF") is a cooperative organization owned by Louisiana rice farmers. It is in the business of buying and selling rice, and it uses the Port to ship its rice products to customers.

Farmers Rice Milling Company ("Farmers") is also in the rice business. It is the largest rice mill in Louisiana. It is a competitor of SLRF, occupying similar market space and competing for the purchase and sale of rice. It also uses the Port to ship its products.

In August 2024, the Port and SLRF entered into a Ground Lease Agreement. The lease allows SLRF to deliver, store, and load rice in its various forms onto barges and other vessels. The lease also allows SLRF to construct a cargo terminal on the leased property.

In January 2025, Farmers filed a petition for declaratory and injunctive relief against the Port and SLRF. In essence, the petition sought to have the lease between the defendants declared null and void because the Port allegedly failed to comply with public lease law by not advertising or considering bids. In response, the defendants each filed an exception of no cause of action, contending that the Port is exempt from such law.

Ultimately, in April 2025, the trial court sustained the defendants' exceptions and dismissed the claims against them. The trial court signed a written judgment on May 9, 2025. The judgment was amended on October 8, 2025, to add decretal language. Farmers appealed this judgment.

On appeal, Farmers asserts two assignments of error:

1. The district court erred in ruling that the Port is not required to comply with the Louisiana Public Lease Law.

2. The district court erred in sustaining the exceptions of no cause of action filed by the Port and SLRF.

**LAW AND ANALYSIS**

The objections that can be raised through the peremptory exception include the exception of no cause of action. La.Code Civ.P. art. 927. The Louisiana Supreme Court addressed the function and legal analysis of this exception in *Scheffler v. Adams and Reese, LLP*, 06-1774, pp. 4–5 (La. 2/22/07), 950 So.2d 641, 646–47 (citations omitted):

> As used in the context of the peremptory exception, a "cause of action" refers to the operative facts which give rise to the plaintiff's right to judicially assert the action against the defendant. The purpose of the peremptory exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. No evidence may be introduced to support or controvert the exception of no cause of action. LSA–C.C.P. art. 931. The exception is triable on the face of the pleadings, and, for purposes of resolving the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought.

> Louisiana retains a system of fact pleading, and mere conclusions of the plaintiff unsupported by facts will not set forth a cause or right of action. The burden of demonstrating that a petition fails to state a cause of action is upon the mover. Because the exception of no cause of action raises a question of law and the district court's decision is based solely on the sufficiency of the petition, review of the district court's ruling on an exception of no cause of action is *de novo*. The pertinent inquiry is whether, in the light most favorable to the plaintiff,

2

and with every doubt resolved in the plaintiff's favor, the petition states any valid cause of action for relief.

So with this in mind, does the petition filed by Farmers state a cause of action? All parties agree that resolution of this issue turns on whether the Port is exempt from Louisiana public lease law.

The public lease statutes include La.R.S. 41:1214(A), which states that when a public entity seeks to lease public land, it "shall publish an advertisement . . . setting forth a description of the land to be leased, the time when bids therefor will be received, and a short summary of the terms, conditions, and purposes of the lease to be executed."

The acceptance of bids is addressed in La.R.S. 41:1215(A)(1), which provides: "At the date and hour mentioned in the advertisement for the consideration of bids, the bids shall be publicly opened by the lessor at its office. The lessor shall accept only the highest bid submitted to it[.]"

The purpose of the public lease laws is "to give all persons a chance to bid on leases of the public lands, to prevent boards and other authorities from favoring one person over others, and to produce to the various agencies of the State named therein larger revenues by requiring competitive bidding for the leases." *Ellis v. Acadia Parish School Board*, 211 La. 29, 42, 29 So.2d 461, 465 (1946).

However, as explained by the supreme court in *Louisiana Associated General Contractors, Inc. v. Louisiana Department of Agriculture and Forestry*, 05-131, p. 14 (La. 2/22/06), 924 So.2d 90, 100, "The legislature, which adopted the public bidding statutes, indisputably has the power to create exceptions to or exemptions from those statutes."

Here, Farmers argues that the Port is not statutorily exempt from the public lease laws. The defendants disagree, pointing to La.R.S. 9:1102.2 and 34:340.11. Because this is strictly a matter of statutory interpretation and construction, a short review of those rules is necessary.

> "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. C.C. art. 9. "When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La. C.C. art. 10. "Laws on the same subject matter must be interpreted in reference to each other." La. C.C. art. 13. Further, "[w]hen the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." La. R.S. 1:4. Finally, the rules of statutory construction provide that, where two (or more) statutes deal with the same subject matter, they should be harmonized if possible; but, that, if there is a conflict, that statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character. *Esteve v. Allstate Ins. Co.*, 351 So.2d 117 (La.1977); *State v. Maduell*, 326 So.2d 820 (La.1976); *Teachers' Retirement System of Louisiana v. Vial*, 317 So.2d 179 (La.1975).

*Louisiana Associated Gen. Contractors,* 924 So.2d at 97–98.

We now turn to La.R.S. 9:1102.2. This statute addresses the rights and duties of riparian owners and their lessees. Subsection A provides in pertinent part:

> (2)(a) *The governing authority of each port commission* of the state shall have the right to lease or sublease any property, whether movable or immovable, that is owned or leased by it, on a long-term basis and without the necessity of public bidding. Any such lease or sublease may be for such purpose or purposes and subject to such terms and conditions, including such compensation to be paid to the governing authority, which the governing authority, in its discretion determines to be in the public interest.

La.R.S. 9:1102.2(A)(2)(a) (emphasis added). The defendants argue that this statutory language expressly exempts the Port from the public lease laws.

Farmers disagrees, noting that La.R.S. 9:1102.2(A)(2)(a) uses the term "port commission," not "harbor and terminal district." And the Port here was established

4

as the Lake Charles Harbor and Terminal District. La.R.S. 34:201. Farmers next points to the Louisiana Constitution. Farmers contends that La.Const. art. 6, § 43 differentiates between "deep-water port commissions" and "deep-water port, harbor, and terminal districts" by referring to them separately. In other words, Farmers argues that because the Port is a harbor and terminal district—as opposed to a port commission—it is not statutorily exempt under La.R.S. 9:1102.2(A)(2)(a).

In response, the defendants argue that the terms "commission" and "port, harbor, and terminal district" are used interchangeably by the legislature and that the Port's board of commissioners is in fact a port commission. In support, they note that La.Const. art. 6, § 44(7) gives the same definition for "deep-water port commissions" and "deep-water port, harbor, and terminal districts." And that definition runs this way: "'Deep-water port commissions' and 'deep-water port, harbor, and terminal districts' mean those commissions or districts within whose territorial jurisdiction exist facilities capable of accommodating vessels of at least twenty-five feet of draft and of engaging in foreign commerce." La.Const. art. 6, § 44(7).

The defendants then cite Louisiana Administrative Code, Title 13, Part I, § 3921(B), which defines "public ports" as "any deep-water port commission or port, harbor and terminal district as defined in article VI, section 44 of the Constitution of Louisiana, and any other port, harbor, and terminal district established under title 34 of the Louisiana Revised Statutes of 1950." The defendants also cite La.R.S. 19:141, an expropriation statute, which collectively refers to "all port commissions and port authorities created by the constitution or statutes of Louisiana[.]"

Finally, the defendants point to the Port's enabling legislation. La.R.S. 34:201–218. In relevant part, La.R.S. 34:202(A)(1) provides that "[t]he governing

5

authority of the district shall be a board of commissioners which shall be known as the Board of Commissioners of the Lake Charles Harbor and Terminal District." Subsection D then uses the term "commission" when it states, "The commission shall be responsible for establishing broad, directional policies of the district and may take only such action which is in accordance with powers and authorities established in this Part or otherwise as authorized by state or federal law." La.R.S. 34:202(D).

According to the defendants, the Port is the entity, and the commission is its governing body; the two are parts of the same whole, and a reference to one is a reference to the other for the exemption under La.R.S. 9:1102.2(A)(2)(a). We agree.

In our view, the Lake Charles Harbor and Terminal District is the geographic and political subdivision created by La.R.S. 34:201, and the port commission is the board of commissioners authorized to govern the district under La.R.S. 34:202. In our view, the legislation interchangeably uses the terms "commission" and "port, harbor, and terminal district." And in our view, the Port is expressly exempt from Louisiana public lease law under La.R.S. 9:1102.2(A)(2)(a).

If that were not enough, La.R.S. 34:340.11 (emphasis added) also authorizes the Port to lease its property without compliance with the public lease laws:

> A. Notwithstanding any other law to the contrary, title to property and improvements thereon acquired by a port, harbor, or terminal district shall vest in the district.
>
> B. (1) *Notwithstanding any other provision of law to the contrary*, any port, harbor, or terminal district may lease any land or buildings owned or acquired by it, or sublease any land or buildings leased as lessee by it, for processing, manufacturing, or commercial business purposes.
>
> (2) The lease or sublease may run for any term not to exceed forty years at a fixed rate. Upon expiration of a primary term of forty years, the lease or sublease may be extended for a term not to exceed ninety-

6

nine years, provided the lease contains a clause for readjustment of the rentals upon expiration of the primary term.

(3) Any port, harbor, or terminal district may ratify, confirm, or approve any lease or sublease entered into pursuant to this Subsection, whether as lessor or lessee, provided the governing authority of the port, harbor, or terminal district authorizes the lease or sublease.

Importantly, La.R.S. 34:340.11 does not restrict the Port's ability to lease its own property for commercial purposes. Nor does it require that the lease comply with the public lease statutes. Rather, it expressly grants the Port the unfettered right to lease its own property notwithstanding any other provision of law to the contrary.

In *Louisiana Associated General Contractors*, 924 So.2d at 98, the supreme court held "that while an exemption from the Public Bid Law must be express, no specific statutory language is required." Here, under La.R.S. 34:340.11(B)(1), the Port is empowered to lease its property for any commercial business purposes, and this carries with it the authority to negotiate leases to effectuate those purposes. By contrast, Louisiana public lease law requires that leases be submitted for public bidding rather than negotiated. To remedy this conflict, we turn to the phrase "notwithstanding any other provision of law to the contrary" in La.R.S. 34:340.11(B)(1). The legislature's use of that language exempts the Port from the restrictions of general public lease law.

What is more, La.R.S. 34:340.11 is in harmony with the corresponding provisions of the Port's enabling legislation, namely La.R.S. 34:203 and 34:215.[1]

---

[1] La.R.S. 34:203(A)(2)(c) states in part:

(v) [The board] may lease or sublease for processing, manufacturing, commercial, and business purposes lands or buildings owned, acquired, or leased as lessee by it, which leases may run for any term not exceeding forty years at a fixed rental, but may run for a term not exceeding ninety-nine years, provided they shall contain a clause or clauses for readjustment of the rentals upon the expiration of a primary term of forty years, and it may ratify, confirm, and approve any such leases heretofore granted by it[.]

All of these statutes give the Port broad authority to negotiate lease contracts, which is contrary to the more general public lease statutes. Thus, like La.R.S. 9:1102.2, we conclude that La.R.S. 34:340.11 expressly exempts the Port from Louisiana public lease law.

Our conclusion that the Port is exempt from public lease law is further supported by *Arnold v. Board of Levee Commissioners of Orleans Levee District,* 366 So.2d 1321 (La.1978); and *Wright v. Lake Charles Harbor & Terminal District*, 188 So.2d 449 (La.App. 3 Cir), *writ denied*, 188 So.2d 922 (La.1966).

In *Arnold*, 366 So.2d at 1326, the supreme court held that the language granting the Orleans Levee Board "jurisdiction, power, and authority to sell and lease . . . lands . . . under such terms and conditions and by such methods as said Board may deem proper" was sufficiently express to establish an exemption from public lease law. In making its decision, the supreme court approvingly cited *Wright*, 188 So.2d 449.

In *Wright*, the plaintiff claimed that the Port—the Lake Charles Harbor and Terminal District—entered into a lease without complying with the public bidding statute. In its analysis, this court turned to the Port's enabling legislation, then set

_____

La.R.S. 34:215 states in part:

[T]he Lake Charles Harbor and Terminal District shall have the authority:

. . . .

(4) To lease or sublease for processing, manufacturing, commercial, and business purposes lands or buildings owned, acquired, or leased as lessee by said district, including environmental and pollution structures and installations, which lease may run for any term not exceeding forty years at a fixed rental and shall contain a clause or clauses for readjustment of the rentals until the expiration of the period of the lease[.]

8

forth in the Louisiana Constitution of 1921, which gave the Port the following authority:

> [T]o lease or sub-lease for processing, manufacturing, commercial and business purposes, lands or buildings owned, acquired or leased as lessee by it, which leases may run for any term not exceeding forty years at a fixed rental, but may run for a term not exceeding ninety-nine years provided they shall contain a clause or clauses for readjustment of the rentals upon the expiration of a primary term of forty years[.]

*Wright*, 188 So.2d at 456 (quoting La.Const. art. 14, § 31 (1921)). This court then held: "We are of the opinion that the Commission may legally enter into a lease contract without complying with [public lease law]." *Id.*

Notably, the quoted language from the Louisiana Constitution of 1921—which formed the basis for this court's holding in *Wright*—has since been restated, nearly verbatim, in La.R.S. 34:215. Thus, although the location of the Port's leasing authority has changed from constitution to statute, the substance of that authority has not.

Yet Farmers contends that *Wright*, 188 So.2d 449, was overruled by our subsequent decision in *West Calcasieu Port, Harbor and Terminal District v. Cajun Marine Services, Inc.*, 348 So.2d 169 (La.App. 3 Cir.), *writ denied*, 350 So.2d 1209 (La.1978).

In *Cajun Marine*, 348 So.2d 169, the port authority advertised for bids to lease its property, received bids from potential lessees, and accepted one of the bids. The issue in that case was whether the port could reject the bid that it had already accepted. The trial court found that because the port had substantially complied with the public lease statutes, a valid lease was formed and thus the bid could not be rejected. As part of its analysis, the trial court also found that La.R.S. 41:1217, in

9

and of itself, did not exempt the port from public lease law.[2]  On appeal, this court agreed with the trial court's findings and affirmed its ruling.

To be clear, the defendants here are not asserting any exception under La.R.S. 41:1217.  Again, the issue in *Cajun Marine*, 348 So.2d 169, was whether the port authority could reject a bid that it had already accepted.  That is not the issue here.  Nor was it the issue in *Wright*, 188 So.2d 449.  Rather, the issue here is whether the Port is statutorily exempt from Louisiana public lease law, and the defendants are asserting exceptions under La.R.S. 9:1102.2 and 34:340.11.  Those statutes were not addressed in *Cajun Marine*.  And those statutes, as currently written, did not exist when *Cajun Marine* was decided.[3]

In sum, there are at least two statutes that expressly exempt the Port from Louisiana public lease law: La.R.S. 9:1102.2 and 34:340.11.  The trial court did not err in sustaining the defendants' exceptions of no cause of action.

## DISPOSITION

The trial court's judgment of October 8, 2025, is affirmed.  All costs of this appeal are assessed to the plaintiff, Farmers Rice Milling Company.

**AFFIRMED.**

---

[2] La.R.S. 41:1217 is part of Louisiana public lease law.  It generally limits the term of leases of state land to ten years.  However, subsection C specifically provides: "The provisions of this Section shall not apply to port authorities of this state." La.R.S. 41:1217(C).

[3] In further support of its assertion that the Port must comply with public lease law, Farmers offers two advisory opinions from the Louisiana Attorney General.  "Opinions of the Attorney General are advisory only and not binding.  We have recognized their persuasive authority, particularly where no cases on point exists." *McCaig v. Town of Gueydan*, 01-140, p. 3 (La.App. 3 Cir. 6/27/01), 788 So.2d 1283, 1285.  But here, we have both legislation and jurisprudence on point.  Thus, we need not address the advisory opinions.