ROGERS, Justice.
 

 ' The State of Louisiana brought this suit against the Humble Oil & Refining Company and the Cameron Parish School Board to be recognized as the owner of twenty regular sixteenth section lands situated in Cameron Parish, and to have decreed that none of the sections is affected by two mineral leases acquired by the oil company •from the original lessees.
 

 In support of its action, the State asserts that section 30 of Act 100 of 1922, authorizing parish school boards to grant mineral leases on sixteenth section lands, was repealed by implication by Act 93 of 1936, as amended by Act 80 of 1938, vesting in the State Mineral Board the right to grant mineral leases on state lands. Defendants deny that the legislature intended to, or did, divest the school board of its power to lease such lands, and they aver that if the legislative act has the effect claimed by plaintiff, it is unconstitutional.
 

 Holding that section 30 of Act 100 of 1922 was not affected by the acts creating and defining the powers and duties of the State Mineral Board, the court below rejected plaintiff’s demands. Plaintiff is appealing from the. judgment.
 

 The facts are not disputed. The decision of the case turns solely on a question of law, which is whether section 30 of 1922 has been repealed by Act 93 of 1936, as
 
 *464
 
 amended by Act 80 of 1938. Briefly stated, the facts out of which the question of law arises are as follows: The State holds title to the lands in all sections numbered sixteen in place, by virtue of the Acts of Congress approved April 21, 1806, 2 Stat. 391, Ch. 39; March 3, 1811, 2 Stat. 665, Ch. 46, Sec. 10; and April 23, 1912, 37 Stat. 90. The State Constitution dedi-> cates and appropriates the .proceeds from the sale of and the revenues derived from such lands to the use and benefit of the public schools. The legislature clothed the parish school boards with the right to grant mineral leases covering the sixteenth section lands, — the rents to be credited to the current school fund of the parish. The latest act on the subject is Act 100 of 1922, which was preceded by Act 120 of 1916 and Act 129 of 1908, as amended by Act 54 of 1910.
 

 At the time Act 100 of 1922 was enacted, Act 30 of the Extra Session of 1915 was in effect, under which the Governor was authorized to grant mineral leases covering “any lands, including lake and river beds and other bottoms, belonging to the State.” This statute was preceded by Act 271 of 1914 and Act 258 of 1912. Act 30 of 1915 was amended by Act 315 of 1926. By Act 9 of the Extra Session of 1928, the Register of the Land Office, with the approval of the Governor, was authorized to interpret state mineral leases.
 

 On February 5, 1934, the Cameron Parish School Board granted a mineral lease to Sidney W. Sweeney covering nineteen sixteenth sections. Sweeney assigned the lease to the Humble Company on June 29, 1934. The lease was continued in effect, without drilling, by payment of annual rentals, up to and including February 5, 1939.
 

 On September 6, 1938, while the Sweeney lease was still in effect, the school board granted a top lease to John B. Daigle, covering the nineteen sixteenth sections described in the Sweeney lease and one additional sixteenth section in another township. On October 31, 1938, Daigle assigned his lease rights to the Humble Company. After securing these rights, the Humble Company relinquished all its rights under the Sweeney lease. Later the Humble Company brought in two producing wells on the property covered by the leases, and the school board is now deriving royalties from this production.
 

 The State contends that the Daigle lease is void because it was granted subsequent to the adoption of Act 93 of 1936 and Act 80 of 1938. The State concedes the lease granted to Sweeney on February 5, 1934, was a valid lease, but contends that due to its relinquishment by the Humble Company it is no longer in effect.
 

 The history of the sixteenth section lands reveals that the Federal Government set aside and dedicated them for the use of public education, and it was not until many years after this State was admitted into the Union that the title to the lands was finally determined. If it be conceded that the title to these sixteenth sections is in the State, there is a moral, if not a clear legal obligation, resting upon the State to dedicate the revenues derived from such lands to public education. The framers
 
 *466
 
 of the various State Constitutions have clearly recognized the State’s moral obligation and have embodied in the various constitutions provisions dealing with sixteenth sections, expressly dedicating the revenues from those sections to public education. At a number of sessions of the legislature, statutes have been enacted providing for the sale, leasing and operation of the sixteenth sections. From the first constitutional or legislative pronouncement up to and including the legislative session of 1934, sixteenth sections have been continuously recognized as school lands, and as such, separate and.distinct from other kinds of public lands.
 

 The provisions of Act 93 of 1936 are very broad. It is possible that they might be construed so as to bring sixteenth section lands within the category of the public lands to which they refer. Such a construction, however, would clearly violate the spirit, if not the letter, of the law governing the leasing of the sixteenth section lands and attach a meaning to the legislative act that probably is not its true meaning. Neither Act 93 of 1936, nor Act 80 of 1938 refers by name to school lands or sixteenth sections, nor does either expressly repeal section 30 of Act 100 of 1922, although Act 80 of 1938, which enlarges the grant of power so as to cover the leasing of levee board lands by the Mineral Board when so requested, does provide that all laws, general and special, in conflict with the provisions of the act are repealed.
 

 If Act 93 of 1936, or Act 80 of 1938, repealed section 30 of Act 100 of 1922 so as to withdraw from parish school boards the right to rent sixteenth section lands, or to lease the mineral rights on those lands, the repeal was by necessary implication for, as we have stated, the later statutes do not contain repealing clauses.
 

 The repeal of a law may be implied, as well as express. Civ. Code, art. 23. And a special legislative act may be impliedly repealed by a general legislative act, the question of whether it has been so repealed being one of legislative intention. This rule is important in this case in view of the fact that this Court, in State v. Rapides Parish School Board, 158 La. 251, 103 So. 757, was called upon to decide whether section 32 of Act 100 of 1922 (which permits school boards to operate on a fiscal year basis and to borrow money for budgeted expenditures) had been repealed by Act 94 of 1924, the general appropriation bill, providing for appropriations on a calendar year basis. The Court referred to Act 100 of 1922 as a special statute for a particular case and to the general appropriation bill as a general law, and held that the general law had not repealed the special law. Under this ruling it appears that Act 100 of 1922 must be construed as a special and not as a general law. On the other hand, it is clear that Act 93 of 1936 and Act 80 of 1938, which in terms authorize the State Mineral Board to lease for mineral purposes “any lands belonging to the State or the title to which is in the public, including rights of way, road-beds, lake and river beds and other bottoms, lands adjudicated to the State at tax sale, and any
 
 *468
 
 other lands and water bottoms by whatever title acquired,” is not a special but is a general law.
 

 For more than one hundred years it has been the settled policy of this State, as reflected in various constitutional and statutory provisions, to treat sixteenth section lands as separate and distinct from all other State lands and to place them under the control of the school authorities. Had the legislature, in adopting the Mineral Board acts, intended to change this well recognized policy and to vest jurisdiction of those lands in the Mineral Board, it is unlikely that it would have left open for construction its intention to do so. The Constitution provides that the revenues derived from sixteenth section lands shall be segregated and dedicated to the use of the public schools. There is no provision either in Act 93 of 1936 or Act 80 of 1938, for the segregation and dedication of such revenues, and in order to hold that the effect of the acts is to repeal Section 30 of Act 100 of 1922, the Court would of necessity have to hold, also, that certain provisions of the repealing acts are unconstitutional. It would seem to be obvious that beforé the legislature intended to make such a drastic change in public policy, a change which would have the effect of placing school lands in the same class as other public lands and to vest the control of such lands in the Mineral Board, the legislature, in compliance with the mandate of the Constitution, would have provided that the revenues derived from the sixteenth section lands should be segregated and used solely for school purposes.
 

 Act 93 of 1936 and' Act 80 of 1938 are general statutes prescribing the manner by which public lands belonging to the State may be leased for the production of oil, gas and other minerals. It is clear that the purpose of the act is to secure for the State greater returns from the mineral development of the public lands. As we have hereinabove observed, the sixteenth section lands have been set apart as school lands and have been dealt with as such for many years. They have been excluded ex industria from all legislation covering or relating to public lands. Their status as school lands was not affected by any. previous legislative act dealing with the leasing of public lands for mineral purposes. Prior to the institution of this suit, the right of a school board to control and administer, for the benefit of the public schools, the sixteenth section lands situated in its parish was never questioned. In fact, subsequent to the adoption of Act 30 of 1915, authorizing the leasing, for mineral purposes, of any lands belonging to the State, the legislature adopted Act 100 of 1922 specifically authorizing the school boards of the' various parishes to lease for mineral development the sixteenth section lands situated in their parishes, the funds realized therefrom to be credited to the current school funds of the parishes.
 

 The language used in Act 93 of 1936 to describe the lands covered by its provisions is both general and particular. After providing generally in Section 4 that the Mineral Board was vested with authority to lease “any lands belonging to the State or the title to which is in the public,”
 
 *470
 
 the’ statute proceeds to designate the kind of lands that are included in the general description, viz., “rights of way, road-beds, lake and river beds and other bottoms, lands adjudicated to the State at tax sale, and any other lands and water bottoms by whatever title acquired.” It will thus appear that the legislature was excessively careful to describe certain kinds of lands that were included in the grant to the State Mineral Board. If it were the intention of the legislature that sixteenth section lands, which were under the jurisdiction of the school authorities, should be amenable to the provisions of the act, it would have been a simple matter for the legislature to also mention those lands in the statutory provisions. The legislature did not do this. No mention of the sixteenth section lands is made anywhere in the legislative act. The omission is significant and can not lead the earnest inquirer to any •other conclusion than that the omission was intentional and that it was never within the contemplation of the legislature to divest the school boards of their control and administration of the sixteenth ’ section lands.
 

 Other provisions of Act 93 of 1936 also, show that it was not within the intention of the legislature to include sixteenth section lands. For instance, under Section 6 the Register of the Land Office is required to advertise the land, keep the records, and to furnish the Mineral Board with information with respect to lands under its jurisdiction. The legislature has never granted the Register any authority over the sixteenth section lands, and it is clear that the Register is not in a position to furnish the Board with any information concerning those lands.
 

 Section 9 gives the Mineral Board supervision “of all mineral leases granted by the State, now in effect or hereafter entered into.” The mineral leases on the sixteenth section lands executed prior to the adoption of the statute were not granted by the State, but were granted by the school boards and were executed in the name of those boards. The meaning of that provision, under a reasonable construction, is that the supervision of the leases granted by the school boards was not given to the Mineral Board as those leases were not per se granted by the State.
 

 This being true, it is clear that the legislature did not intend that Act 93 of 1936 should apply to any lands but those covered by Act 30 of the Extra Session of 1915, and the leases referred to in Section 9 are the leases granted by the State in accordance with the act of 1915, Ex.Sess., which is one of the acts expressly repealed by Act 93 of 1936.
 

 Section 13 dedicates certain royalties, in addition to the one-eighth royalty on oil and gas and 75 cents per ton on sulphur, to the State University, social security, and servicing of the State debt. • '
 

 Section 14 extends the provisions of the act to public roads, canals or other rights of way and easements, the title to which is in either the State or one of its parishes. It is significant that the framers of the act thought it necessary to specifically refer to that character of property and failed to mention the sixteenth section lands, which are of vital importance to the public
 
 *472
 
 schools, if the legislature should have intended that the school lands should fall within the terms of the legislative act.
 

 Section 20 requires that all funds derived from mineral leases shall be collected by the Register and deposited in the State treasury to the credit of the general fund. The State Constitution, Sections 14 and IS of Article 12, specifically and in terms, requires that the proceeds from the sale or lease of sixteenth section lands shall constitute part of the school funds and that those funds must be segregated and kept in separate bank accounts under the control of the parish school boards. Since it can not be presumed that the legislature would violate a constitutional mandate by misappropriating school funds, it would seem to be clear that the legislature did not intend to do so by enacting the Mineral Board acts.
 

 Finally, as we have hereinabove remarked, the repealing clause of the statute, Section 21, expressly repeals certain statutes, which otherwise would have been repealed under the clause providing for the repeal of statutes in conflict therewith, but makes no mention of Section 30 of Act 100 of 1922. This plainly indicates that it was not the legislative intention that Act 93 of 1936 was to be a substitute for Act 100 of 1922.
 

 As is well said by the judge of the district court in his reasons for judgment and as hereinabove pointed out, “these Sixteenth Sections have always been considered as a separate and distinct part of the public lands. The machinery set up for the administration of these lands is now and has always been separate and distinct from that set up for the administration of other public lands. To permit Act 100 of 1922 to remain in full force and effect in no wise interferes with the operation of Act 93 of 1936 or Act 80 of 1938, and in our opinion the Legislature did not intend that the powers vested in the School Boards by Act 100 of 1922 should be taken from them by the general statutes.”
 

 The repeal claimed herein, if admitted, would operate to the prejudice of the educational system of the State and the legislative intent to do this should be clear and controlling before it can be held to have that effect. It is reasonable to conclude that the Legislature did not intend such an effect to result from the adoption of the Mineral Board acts.
 

 Since we have reached the conclusion that the administration and control vested by Act 100 of 1922 in the defendant school board over the sixteenth section lands involved in this suit was not affected by the adoption of Act 93 of 1936 or Act 80 of 1938, it is unnecessary for us to pass on the several alternative pleas of the defendants.
 

 For the reasons assigned, the judgment, appealed from is affirmed.