403 So.2d 49 (1981)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS
v.
CITY OF PINEVILLE.
No. 81-C-0017.
Supreme Court of Louisiana.
July 2, 1981.
Rehearing Denied September 18, 1981.
*50 Dan E. Melichar, Gravel, Robertson & Brady, Alexandria, for plaintiff-applicant.
John C. Young, Baton Rouge, for defendant-respondent.
DIXON, Chief Justice.
The source of this litigation developed in 1969, when the Department of Highways began to widen and improve Louisiana Highway 28. In order to make the improvements it was necessary to relocate certain water lines, maintained by the City of Pineville, which were located on the highway right of way. The estimated cost of the relocation was $82,000, which the city was allegedly unable to afford at the time. To speed the project along, the Department of Highways offered to advance the costs for the city's share of the project, if those sums would be reimbursed at a later date.
On April 1, 1969 the Council of the City of Pineville passed a resolution authorizing the mayor to execute an agreement with the Department of Highways regarding repayment of the money to be advanced; the council also committed the city to include in its budget the sums necessary to make repayment.
On May 12, 1969 the Mayor of Pineville affixed his signature to an instrument styled an "Agreement," in which the Department of Highways obligated itself to advance "the sums necessary to accomplish the relocation of the City's water lines to accommodate the construction of the Pineville-Libuse Highway ..." The agreement went on to state:
"The City of Pineville agrees that commencing on April 1, 1970, it will repay to the Department of Highways one-third of the amount advanced for the relocation of the water lines, and that it will repay, to the Department of Highways, one-third of the amount, on the First day of April, 1971, and the final one-third on the First day of April, 1972, with interest at 6 *51 per cent from maturity date, all such payments to be made to the Department of Highways at its office in Baton Rouge, Louisiana, and the Council of the City of Pineville agrees that it will include such sums in its annual budget for the next three fiscal years."
Pursuant to this agreement, the Department of Highways began to advance payments to the city. The first payment was made in June, 1969, and the final payment occurred in February, 1970. More than $92,000 was advanced, $88,864.86 of which was allegedly the city's share of the cost.
The city has never repaid any part of the sums advanced to it by the Department of Highways.
In February, 1971 the Department of Highways filed a petition, captioned "Suit on Contract," alleging that the city had not made its first installment, due on April 1, 1970 as called for in the agreement. More than two years later, after several preliminary matters were resolved, the city filed an exception to the district court's jurisdiction, claiming that the obligation incurred by the city was not valid because prior approval from the State Bond and Tax Board had not been obtained. Perhaps in response to this exception, the Department of Highways filed a motion to dismiss the suit without prejudice in June, 1973. An order of dismissal was signed by the district judge.[1]
In August, 1976 the Department of Highways filed another petition, incorporating allegations in the original petition, and claiming that full reimbursement was due under the terms of the agreement. Alternatively, the Department of Highways prayed for recovery even in the event that the contract with the city was not valid.
The city again filed an exception to the court's jurisdiction, which was overruled. It then filed a motion for summary judgment and peremptory exceptions of no cause of action and prescription. The motion for summary judgment was denied, but the court sustained the exception of prescription, pretermitting judgment on the exception of no cause of action. No testimony was taken at the hearing on the exception; the record consists entirely of pleadings and documents.
The trial court held that, even though the agreement had been reduced to writing, the obligation sued upon was a loan, prescriptable in three years. C.C. 3538. The Court of Appeal ruled that, although the department's action sought to recover the money that it had loaned the city, the written agreement constituted an acknowledgement of the debt, converting the applicable period of prescription to ten years under C.C. 3544. The judgment of the district court was reversed. 390 So.2d 228 (La.App. 3d Cir. 1980). This court granted writs primarily to determine which period of prescription was applicable. 396 So.2d 1326. First, however, it must be decided whether and to what extent prescription is applicable.

Immunity from Prescription
Article 19, § 16 of the 1921 Constitution, in effect at the time the department's cause of action arose, states:
"Prescription shall not run against the State in any civil matter, unless otherwise provided in this Constitution or expressly by law."
An identical provision can be found in Article 12, § 13 of the 1974 Constitution, as well as in Article 193 of the 1913 Constitution and Article 193 of the 1898 Constitution.
In order to apply this constitutional immunity from prescription, it would be necessary to characterize the Department of Highways, a state agency, as the "State" itself. The matter is not free from doubt. In two early decisions, for example, it was held that levee districts could not claim immunity from liberative prescription because they were political corporations with a legal existence distinct from the "state." Board of Commissioners v. Earle, 169 La. 565, 125 So. 619 (1929); Board of Commissioners v. Pure Oil Co., 167 La. 801, 120 So. 373 (1929). The rationale of those decisions was that levee districts, by virtue of the *52 fact that they were authorized to sue and be sued in their own names, were legal entities separate from the state. The same rationale was upheld in Haas v. Board of Commissioners, 206 La. 378, 19 So.2d 173 (1944), where a claim of acquisitive prescription was made against a levee district. More recently, however, this court has held that claims of acquisitive prescription against mineral rights held by levee districts were barred by virtue of the constitutional prohibition against the divestiture of mineral rights in property "sold by the State," contained in Article 4, § 2 of the 1921 Constitution. Dynamic Exploration, Inc. v. LeBlanc, 362 So.2d 734 (La.1978).[2] It thus appears that, insofar as levee districts are concerned, the definition of the "State" depends upon what is involved: acquisitive and liberative prescription may run against a levee district, but acquisitive prescription of mineral rights may not.[3] No decision has ever held that a levee district could be characterized as the "State" for purposes of the immunity from prescription contained in the Constitution.
In terms of the present case, the foregoing decisions dealing with levee districts are not inapposite. It has been repeatedly explained that levee districts have the right to sue and be sued in their own names as entities separate from the state. See Board of Levee Commissioners v. Whitney Trust & Savings Bank, 171 La. 28, 129 So. 658 (1930). Other decisions have stressed the fact that levee districts were political corporations which, once possessed of a cause of action, were the sole parties capable of bringing suit to enforce their rights. It was declared that the State Attorney General could not bring suit in the name of the state on a cause of action vested in a levee board. See State v. Standard Oil Co., 164 La. 334, 113 So. 867 (1927); State v. Tensas Delta Land Co., 126 La. 59, 52 So. 216 (1910). Consistent with this view, it has also been held that, when the state holds title to property, prescription cannot run, notwithstanding the fact that the property is administered by a state agency. State v. F. B. Williams Cypress Co., 131 La. 62, 58 So. 1033 (1912). The principle that the state is immune from claims of prescription has been explained as being confined to actions brought by and in the name of the state itself. Board of Commissioners v. Toyo Kisen Kaisha, 163 La. 865, 113 So. 127 (1927). See also Opinions of the Attorney General, March 1, 1962 to March 1, 1964, pp. 237-38; April 1, 1934 to April 1, 1936, pp. 873-76.
We subscribe to the following reasoning, advanced in the cases cited above: the "State," for the purposes of the constitutional immunity from prescription, does not include a state agency which is a body corporate with the power to sue and be sued and which, when vested with a cause of action, is the sole party capable of asserting it. Regardless of its status as an instrumentality of the state, such an agency remains a distinct legal entity subject to claims of prescription except where the law provides otherwise.
It should be noted that the Department of Highways, the party plaintiff in this suit, was abolished in 1976; its powers, functions and duties were transferred to the Department of Transportation and Development. R.S. 36:509(F). However, the legislature provided that the department would continue to exercise its responsibilities as provided by law. R.S. 36:802. Specifically, the law governing the transfer of powers provided that all lawsuits pending before the effective *53 date of the transfer "shall be continued in the name of the agency so transferred. R.S. 36:854(C).
The Department of Highways, like the Department of Transportation and Development, was established as a "body politic and corporate." R.S. 48:13. It was given the power to "sue and be sued." R.S. 48:22. Because of this authority, the Department of Highways has been held to be a legal entity separate from the state itself:
"The commission, in our opinion, is a distinct legal entity from the state. [The law] makes it a body corporate, with power as such to sue and be sued. It is an agency of the state, and not the state itself, created for the purpose of executing certain duties, devolving primarily upon the state. In a general sense, in its relations to the state, it is not dissimilar to levee districts, which are bodies corporate, created for the purpose of constructing and maintaining levees, which are duties, devolving primarily upon the state...." Saint v. Allen, 172 La. 350, 360, 134 So. 246, 249 (1931).
See also Department of Highways v. Lykes Bros. Steamship Co., 209 La. 381, 25 So.2d 623 (1945).
Accordingly, we hold that the Department of Highways cannot claim the constitutional immunity from prescription, since it cannot be characterized as the "State" for that purpose.[4]

Prescription and the Cause of Action
The Civil Code establishes the general rule that all personal actions are prescribed by ten years, unless the specific action is governed by some other term of prescription. C.C. 3544. Only two other prescriptive periods might have application to this case: the prescription of three years, C.C. 3538, and the prescription of five years, C.C. 3540.
Before determining the applicable period of prescription, however, another issue must be considered. In various pleadings, the City of Pineville has consistently maintained that the obligation underlying the agreement is unenforceable, and that no cause of action exists for the collection of the debt. Reliance is placed upon two statutes involving the State Bond and Tax Board. One of these, R.S. 47:1803, states in part:
"Hereafter, no ... municipality, ... shall have authority to borrow money, incur debt, or to issue bonds, or other evidences of debt, or to levy taxes, or to pledge uncollected taxes or revenues for the payment thereof, where [it is] authorized by the constitution or laws of the state so to do, without the consent and approval of the board."
Failure to comply with this provision is a misdemeanor offense; in addition, R.S. 47:1806 provides in part:
"Any contract, debt, obligation, bond, or other evidence of indebtedness whatsoever, incurred or issued in violation of this Part, and without the consent and approval of the board, shall be null and void, and no court of this state shall have jurisdiction to enforce the payment thereof, or of any suit or other proceeding affecting or involving the same."
The city contends that no approval or consent was obtained from the board prior to the execution of its agreement with the department. An affidavit supporting this contention appears in the record, signed by an associate director of the State Bond Commission (which became the successor to the State Bond and Tax Board pursuant to R.S. 39:1408). The affidavit states that, after a thorough search of the commission's records, no evidence can be found indicating that the city had obtained approval to incur *54 the debt. The department itself made a written admission that it did not attempt to obtain such approval on the city's behalf, and disclaimed knowledge of whether such approval had in fact been obtained.
The failure of either court below to address the issue of the invalidity of the agreement between the city and the department was error. The nature of a cause of action must be determined before it can be decided which prescriptive term is applicable. In the present case, there is no doubt that the department alleges that the city is obligated to it for the repayment of the sums it had advanced. The classification of the source of that obligation is essential: if, as the city has alleged, the agreement is an absolute nullity, it is self-evident that no cause of action would lie for the enforcement of the written obligation. Under the terms of R.S. 47:1806, such obligations, when incurred without approval of the state agency, are void ab initio. Despite the city's well pleaded allegations to the contrary, both courts below simply assumed that the contract was valid, and proceeded to determine which period of prescription applied to the action. The assumption was not warranted.
The city's motion for summary judgment was premised on the invalidity of the written agreement under R.S. 47:1806. The city alleged that it did not obtain the necessary approval from the State Bond and Tax Board. The department did not deny this allegation. The motion for summary judgment was also accompanied by a supporting affidavit in the record, which clearly states that no record can be found indicating that the city obtained the requisite approval.
Summary judgment is proper where there is no genuine issue of material fact, and where judgment may be entered as a matter of law. C.C.P. 966; Cates v. Beauregard Electric Coop., 328 So.2d 367 (La.1976). Since the department failed to dispute the city's allegation that no approval of the agreement had been obtained under the terms of R.S. 47:1803, it appears that there is no genuine issue on this score. The city's factual allegation is supported by the accompanying affidavit. And, as a matter of law, R.S. 47:1806 dictates that the agreement cannot be enforced. It is a nullity, confected in contravention of a prohibitory law. C.C. 12. The city's motion for summary judgment therefore should have been granted: the written obligation is unenforceable. Since the department is without a cause of action to enforce the written contract, it follows that the written contract is irrelevant for the purposes of determining the applicable period of prescription. The cause of action cannot be characterized as seeking enforcement of a written obligation, which was the notion upon which the Court of Appeal rested its opinion. That opinion must be vacated.[5]
*55 The determination that the department cannot enforce its agreement with the city does not mean that the department is without a remedy. This court has held that, when a city incurs an obligation in violation of a prohibitory law, the city's obligees may nevertheless recover the sums owed them under the theory of unjust enrichment established in C.C. 1965. Coleman v. Bossier City, 305 So.2d 444 (La.1974). See also West Baton Rouge School Board v. T. R. Ray, Inc., 367 So.2d 332 (La.1979). In the Coleman case, one of the statutes which rendered the city's contract a nullity was the same one which is implicated here, R.S. 47:1806. It should be noted that the department's second petition was not filed until after the Coleman decision was rendered, and the petition itself recognized that the claim could be characterized in more than one way. In fact, the petition made an alternative prayer for recovery even in the event that the contractual obligation was held to be null; the issue of unjust enrichment was also raised in brief.
The department's action plausibly can be founded upon the theory of unjust enrichment[6] or some other form of quasi-contract. Actions on quasi-contracts are governed by the general ten year prescriptive term of C.C. 3544. See, e. g., Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967) (unjust enrichment); Gaude v. Gaude, 28 La.Ann. 181 (1876) (negotiorum gestio); Smith v. Phillips, 175 La. 198, 143 So. 47 (1932) (payment of a thing not due). Given this characterization of the cause of action, the department's suit was timely.
The posture in which this case has been presented is similar to the situation in Lagarde v. Dabon, 155 La. 25, 98 So. 744 (1923). The plaintiff in that action alleged that she and the defendants' decedent had made an agreement to form a partnership, with each of them to share equally in the property which the partnership acquired. Her suit to recover half of the partnership assets was successfully defended by way of an exception of no cause of action, based on the fact that the partnership agreement had not been reduced to writing. C.C. 2834. While this court recognized that an unwritten partnership agreement was invalid and unenforceable, it also observed that the plaintiff had made an alternative demand, for the recovery of all sums that she had invested in the enterprise. Such a claim, it was determined, stated a cause of action in quasi-contract, for the recovery of a payment not due. The ten year prescriptive term was held to apply to such an action, and the case was remanded to the trial court to determine whether a partnership agreement had in fact been made.
We make the same disposition here. The department's action is for the recovery of sums in advance to the city. Although the agreement binding the city to fulfill this obligation is unenforceable, the formal source of the city's obligation may nevertheless be based upon a quasi-contract. The department's petition sets forth a cause of action on that basis, and this suit was filed within ten years from the time the cause of action arose. For reasons different from those of the Court of Appeal (which we find incorrect), the judgment of the Court of Appeal is affirmed, and the case is remanded to the district court for further proceedings consistent with this opinion. The costs of this proceeding are taxed to the defendant.
DENNIS, J., dissents with reasons.
WATSON and MARCUS, JJ., dissent.
NOTES
[1] A suit that is voluntarily dismissed has no effect upon prescription. C.C. 3519.
[2] The origin of this rule can be traced to a decision by a Court of Appeal in Shell Oil Co. v. Board of Commissioners of Pontchartrain Dist., 336 So.2d 248 (La.App. 1st Cir. 1976), writ denied 338 So.2d 1156 (La.1976) ("No error of law"), which was cited approvingly in a footnote to a decision by this court. Board of Commissioners of the Caddo Levee Dist. v. S. D. Hunter Foundation, 354 So.2d 156 (La.1977).
[3] That is to say, acquisitive prescription of mineral rights cannot occur on claims governed by the 1921 Constitution. We also note that Act 76 of 1938 declared that no prescription could run against levee districts. This act was repealed in 1944, but in 1964 the legislature enacted R.S. 38:295, which provided that acquisitive prescription could not run against levee districts.
[4] This holding is not inconsistent with the decision in Scorsune v. State, 230 La. 254, 88 So.2d 211 (1956), which involved a claim of liberative prescription relating to a servitude of right of way. In that case, it appears that the right of way had been granted to the state itself, and the court ruled that the property was immune from the prescription of nonuse. We also note that the legislature has specifically provided that acquisitive prescription cannot run against immovable property or rights acquired by the Department of Highways for use as rights of way. R.S. 48:226.
[5] We note in passing that the Court of Appeal's opinion is incorrect, even assuming that the contract is valid. The court stated that, when an obligation "is acknowledged in writing, the character of the action is changed and it becomes a personal action under the general article (3544)." 390 So.2d at 232. This is true only if the acknowledgement is made after the obligation is incurred: one cannot acknowledge a debt that does not yet exist. The decision in Jones v. Butler, 346 So.2d 790 (La.App. 1st Cir. 1977), relied upon by the court below, is consistent with this. There, a written acknowledgement of a loan was made after the loan itself had been received, evidencing a specific debt. In the present case, the agreement was confected before any sums were advanced. The Court of Appeal, in characterizing the written agreement as an acknowledgement of the city's preexisting obligation to relocate the water lines, attempted to satisfy the logical requirement that an acknowledgement must occur after the obligation is perfected, but, in doing so, ignored the fact that the cause of action involved in this suit is one for repayment of a loan, not for the enforcement of the city's obligation to relocate its water lines.

In the present case, for example, the agreement merely sets forth the terms of the city's obligation; it is not evidence of how much money the department actually advanced the city. To prove the amount of the debt, the department apparently must rely upon other evidence, such as its cancelled checks. Many of the obligations enumerated in C.C. 3538 are often accompanied by written instruments, such as judgments of alimony, lease agreements and contracts for the professional services of lawyers and physicians. The mere fact that these obligations may be evidenced in writing does not mean that they are subject to a ten year prescriptive term.
[6] "[N]o one ought to enrich himself at the expense of another." C.C. 1965.