# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 11-999 consolidated with CA 11-1001, CA 11-1046

**VERMILION PARISH SCHOOL BOARD**

**VERSUS**

**CONOCOPHILLIPS COMPANY, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 84388-F
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**BILLY HOWARD EZELL**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Oswald A. Decuir, Billy Howard Ezell, and James T. Genovese, Judges.

**REVERSED AND REMANDED.**

**Genovese, J., concurs in the result.**

**Scott R. Bickford**
**Regina O. Matthews**
**Martzell & Bickford**
**338 Lafayette St.**
**New Orleans, LA 70130**
**(504) 581-9065**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Vermilion Parish School Board**

**Lawrence Paul Simon, Jr.**
**Liskow & Lewis**
**P. O. Box 52008**
**Lafayette, LA 70505**
**(337) 232-7424**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
   **Union Oil Company of California**
   **The Pure Oil Corp.**

**David L. Landry**
**1214 Parasol Place**
**Pensacola, FL 32507**
**(850) 492-7240**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
   **Vermilion Parish School Board**

**Daria B Diaz**
**Keith B. Hall**
**Stone, Pigman, Walther, Wittmann**
**546 Carondelet St.**
**New Orleans, LA 70130**
**(504) 581-3200**
**COUNSEL FOR DEFENDANT/APPELLEE:**
   **ConocoPhillips Company**

**EZELL, Judge.**

These consolidated cases present the res nova issue of whether an action by the Vermilion Parish School Board (VPSB) for underpayment of royalties, on its behalf and on behalf of the State, is subject to the three-year prescriptive period found in La.Civ.Code art. 3494. The VPSB argues that the leases at issue cover Section 16 lands which are state-owned properties not subject to the three-year prescriptive period. La.Civ.Code art. 3494(5). All three trial courts held that the three-year prescriptive period is applicable. For the following reasons, we reverse and remand for further proceedings.

## FACTS

In December 2005, the VPSB, individually and on behalf of the school children of Vermilion Parish and on behalf of the State of Louisiana, filed suit against several Defendants concerning an oil, gas, and mineral lease dated December 5, 1963, referred to as the Unocal Lease and an oil and gas mining lease dated April 4, 1935, referred to as the LL&E Lease. In January 2006, the VPSB filed a second suit against several Defendants concerning oil, gas, and mineral leases dated September 25, 1984, March 1, 1968, January 5, 2000, and December 5, 1963, referred to as the Amerada Hess Leases. The third lawsuit was filed by the VPSB on January 3, 2006, against several Defendants concerning oil, gas, and mineral leases dated July 2, 1953, January 2, 1976, and February 1, 1979, referred to as the ConocoPhillips Leases. All three suits involved claims for the underpayment of royalties derived from Section 16 mineral leases occurring in the 1990's.

The Defendants filed exceptions of prescription. A hearing in the Unocal matter was held on June 25, 2007. In reasons for ruling, the trial court stated that the mineral rights at issue were severed from the land and vested in the VPSB, with the VPSB seeking payment of royalties pursuant to contractual rights between the VPSB

and Unocal. The trial court stated that the State was not a party to the mineral leases and that the VPSB was a separate body with the sole power to enter into the mineral lease, with the power to sue and be sued. The court granted the exception of prescription finding that the three-year prescriptive period in La.Civ.Code art. 3494(5) is applicable because only the State is immune from liability.

A hearing in the Amerada Hess matter was held on October 8, 2007. The trial court also ruled that the three-year prescriptive period was applicable.

In the ConocoPhillips matter, the VPSB entered into a stipulated consent judgment. Reserving all rights of appeal, the VPSB agreed not to oppose the exception of prescription in order to place the action in the same procedural posture for appeal as the other two matters.

The VPSB appealed all three matters. At the request of the VPSB, and without opposition from the Appellees, the three matters were consolidated for briefing and argument on appeal.

## DISCUSSION

We must first address an argument by the Defendants that stipulations by the VPSB preclude it from appealing the judgments in the trial court. The Defendants argue that the VPSB is not an "agent" of the State and that the State has no rights to royalties from the VPSB's lease of Section 16 lands. They claim that the VPSB stipulated in the Unocal and Amerada Hess matters that it would not appeal the trial court's ruling that the State itself has no cause of action for the claims of nonpayment or underpayment of royalties under the mineral lease.

The VPSB did make this assertion in its motion to withdraw certain affirmative defenses and for certification of the order as a final judgment. However, the VPSB further stated that it was reserving its right to litigate the issue of "whether its royalty claims are immune from liberative prescription due to the ownership, in trust, of the lands at issue by the State." The VPSB specifically reserved "the right to seek the

2

remedy of lease cancellation and all other remedies that may be available for breach of a lease by underpayment of royalties in the event that [the trial court's] grants of Defendants' Exception of Prescription is reversed on appeal."

Also, as recited in the factual section above, the VPSB simply did not oppose the exception of prescription in the ConocoPhillips matter so that all three cases would be in the same procedural posture for appeal. We find that the VPSB properly reserved its right to seek review of the granting of the exceptions of prescription in favor of the Defendants. Therefore, we will now address the issue raised by the VPSB of whether it is immune from prescription because of ownership of Section 16 lands by the State.

This issue raised by this case involves questions of law. Therefore, the appropriate standard of review is de novo. *Thiels v. Dennis*, 09-957 (La.App. 3 Cir. 2/3/10), 29 So.3d 715. Pursuant to a de novo standard of review, an appellate court must determine whether the trial court was legally correct or legally incorrect and gives no additional weight to the trial court's determination. *Id*.

The VPSB's arguments are based on its position that the revenues from the mineral leases are derived from Section 16 lands, which are state-owned properties, making La.Civ.Code art. 3494(5)'s three-year liberative prescription inapplicable. The VPSB argues that it entered into the leases on behalf of the State, the owner of the Section 16 lands and mineral rights, as trustee, and also on behalf of the school children, the beneficiaries of the trust.

Pursuant to La.Const. art. 12, § 13, "Prescription shall not run against the State in any civil matter, unless otherwise provided in this Constitution or expressly by law." Applicable to this particular matter, La.Civ.Code art. 3494(5) specifically provides that an action for the recovery of an underpayment of royalties is subject to a three-year prescriptive period unless the payment, rent, or royalties are derived from "state-owned properties."

3

<u>**Ownership of Section 16 Lands**</u>

In 1806, the United States Congress set aside and dedicated for the use of public education Section 16 lands. *State v. Humble Oil and Ref. Co.*, 195 La. 457, 197 So. 140 (1940); *Terrebonne Parish Sch. Bd. v. Texaco, Inc.*, 178 So.2d 428 (La.App. 1 Cir.), *writ refused*, 179 So.2d 640 (La.1965), *cert denied*, 384 U.S. 950, 86 S.Ct. 1568 (1966). After Louisiana was admitted to the Union in 1812, title to the lands was vested in the State. *Id.* The Louisiana Supreme Court recognized that Section 16 lands are unique because they are a separate and distinct part of public lands and that the administration of those lands has always been separate and apart from the administration of other public lands. *Humble Oil and Ref. Co.*, 197 So. 140. "For more than one hundred years it has been the settled policy of this State, as reflected in various constitutional and statutory provisions, to treat sixteenth section lands as separate and distinct from all other State lands and to place them under the control of the school authorities." *Id*. at 144.

In *Ebey v. Avoyelles Parish School Board*, 03-765 (La.App. 3 Cir. 12/17/03), 861 So.2d 910, *writ denied*, 04-196 (La. 3/26/04), 871 So.2d 349, this court discussed the history of the trust doctrine over Section 16 lands in Louisiana and recognized that Section 16 lands are held by Louisiana in trust for the benefit of school children. We further observed that "[t]he management of these trust lands is vested by the State in the local school boards." *Id*. at 914 (citing La.R.S. 17:100.6 and La.R.S. 41:638).

In *School Board of Avoyelles Parish v. U.S. Department of Interior*, 647 F.3d 570 (5 Cir. 2011), the federal court, citing *Ebey*, recognized that the school board is not the true owner of Section 16 lands; the State of Louisiana is the true of owner of Section 16 lands who vests the management of these trust lands in local school boards.

Statutory provisions further evidence that Section 16 lands are owned by the State because specific authority is granted to the school boards regarding the lands, which would not be necessary if school boards owned the lands. Louisiana Revised

4

Statutes 41:961(emphasis supplied), involving an action by a school board for the recovery of title and damage for trespass, specifically provides that title to Section 16 lands is still in the State as follows:

> The school boards of the various parishes of the state may contract with and employ on the part of the State of Louisiana, attorneys at law, to recover for the state, damages for trespass to the sixteenth section known as school lands the **title to which is still in the state**. Each of the boards may make these contracts for the lands situated in its own parish and no others. The school boards may also sue for and recover the sixteenth section known as school lands.

Section 30 of Act 110 of 1922 authorized parish school boards to grant mineral leases on Section 16 lands. *Humble Oil and Refining Co.*, 197 So. 140. Louisiana Revised Statutes 30:151 through 30:158 sets forth the procedures for the granting of mineral leases covering Section 16 lands. Pursuant to La.R.S. 30:152(A), "[e]very agency is authorized to lease its land for the development and production of minerals." Louisiana Revised Statutes 30:152(A) further gives school boards the authority to lease Section 16 lands. A "school board" is included in the definition of "agency." La.R.S. 30:151. If school boards owned Section 16 lands and the minerals, there would be no need to further authorize them to lease the lands because the statute already authorizes an agency to lease its own lands.

Further indication that the State is owner of Section 16 lands is found in La.R.S. 41:631 which provides that the Registrar of the State Land Office shall sell a tract of land not less than five acres of Section 16 lands donated by Congress to this State for school purposes. Louisiana Revised Statutes 17:87 authorizes parish school boards to rent or sell Section 16 lands or to sell the timber located on Section 16 lands.

Clearly, Section 16 lands are owned by the State. Both jurisprudence and statutory authority provides that Section 16 lands are owned by the State with school boards given the administrative authority over lands.

## Ownership of Minerals in Section 16 Lands

Defendants argue the VPSB was given the exclusive right to lease Section 16 lands and, as the mineral lessor, it enjoys all benefits under the lease. Defendants further argue that only the VPSB has the capacity to sue to enforce the contractual rights under the Section 16 lands leases, and therefore, the VPSB may not assert the State's constitutional immunity. Relying on *State, through Department of Highways v. City of Pineville*, 403 So.2d 49 (La.1981), the Defendants claim that the VPSB is a state agency which is subject to a claim of liberative prescription. The supreme court explained:

> We subscribe to the following reasoning, advanced in the cases cited above: the "State," for the purposes of the constitutional immunity from prescription, does not include a state agency which is a body corporate with the power to sue and be sued and which, when vested with a cause of action, is the sole party capable of asserting it. Regardless of its status as an instrumentality of the state, such an agency remains a distinct legal entity subject to claims of prescription except where the law provides otherwise.

*Id*. at 52.

While we agree that school boards are agencies which are subject to claims of prescription, we find that premise does not apply under the circumstances of this case when Section 16 lands are involved.

The Louisiana Constitution of 1921, Article 4, § 2 provided that the State could not alienate the mineral rights it owned. Louisiana Constitution of 1974, Article 9, § 4(A) retained the provisions that the State could not alienate any minerals it owned. School boards were not given the authority to grant mineral leases on Section 16 lands until 1922 by Section 30 of Act 110. Therefore, the State still owns the minerals contained in Section 16 lands. The school boards are given administrative authority over Section 16 lands and have been specifically given the power to grant mineral leases on Section 16 lands as part of the overall administrative scheme concerning

6

Section 16 lands. La.R.S. 30:152(A). No ownership of the minerals was conferred as the Louisiana Constitution forbids it.

In discussing Article 9, § 4 enacted by the 1974 Louisiana Constitution, the second circuit acknowledged the "jurisprudential rule holding that prescription does not run against state-owned mineral rights was established as a corollary to the prohibition against alienation of state-owned minerals" had been codified by La.Const. art. 9, § 4(B). *Cohort Energy Co. v. Caddo-Bossier Parishes Port Comm'n*, 37,449, p. 9 (La.App. 2 Cir. 8/20/03), 852 So.2d 1174, 1180 (citing *Shell Oil Co. v. Bd. of Comm'rs. of Pontchartain Levee Dist.*, 336 So.2d 248 (La.App. 1 Cir.), *writ refused*, 338 So.2d 1156 (La.1976)). Louisiana Constitution Article 9, § 4(B) provides that: "[l]ands and mineral interests of the state, of a school board, or of a levee district shall not be lost by prescription."

The second circuit then considered whether the prohibition against alienation of its minerals by the State also applied to state agencies. The second circuit recognized that the supreme court in *Stokes v. Harrison*, 238 La. 343, 115 So.2d 373 (1959), held that when a school board sold a parcel of land that it had previously purchased from a private landowner without reservation of minerals, the sale was not a sale of property by the State requiring it to reserve the minerals for the purposes of La.Const. art. 4, §2 of the 1921 Louisiana Constitution. The second circuit recognized that that "the *Stokes* court concluded that a 'political subdivision' or a 'political corporation' was not intended by the framers of the Constitution to be included within the term 'state' where it applies to the restriction or limitation of the strong policy of this state favoring prescription of reserved mineral interests." *Cohort Energy Co.*, 852 So.2d at 1182. The second circuit then concluded that the Caddo-Bossier Parishes Port Commission is a separate entity from the State because it is appointed by municipal and parish authorities, and title to land no longer vests in the State but vests in the port commission citing La.R.S. 34:3158 and 34:3160. There is obviously a difference

7

when dealing with land the school board owns itself as opposed to Section 16 lands the school board administers for the State.

In *Dynamic Explorations, Inc. v. LeBlanc*, 362 So.2d 734 (La.1978), the supreme court affirmed a decision of the first circuit holding that a levee district was the "state" within the meaning of La.Const. art. 4, § 2 of the 1921 Louisiana Constitution. The court noted that the 1974 Louisiana Constitution overruled *Stokes*, 115 So.2d 373, by providing that a school board cannot alienate minerals.

The law is clear that a state agency can sue and be sued as an independent entity. In that case, the benefit the State has of immunity from prescription is not applicable. However, Section 16 lands are a different matter. Section 16 lands are lands owned by the State but managed by the school boards for the benefit of public education. The State still owns the minerals in Section 16 lands but as part of the administrative scheme of the lands, the school boards were given the authority to lease the lands.

## State as a Party to Proceedings

The courts below found that the State has no cause of action for the claims of nonpayment or underpayment of royalties under the mineral lease granted by the VPSB. The VPSB argues that it has brought this action in the name of the State as agent and administrator of the Section 16 lands and mineral interests. The Defendants argue that the VPSB is the sole lessor under the mineral lease so that it is the only proper party.

In *Board of Com'rs. of Port of New Orleans v. Toyo Kisen Kaisha*, 163 La. 865, 113 So. 127 (1927), the supreme court declared that the personal rights of state agencies may be lost by liberative prescription, but public things administered by a state agency may not be lost by acquisitive prescription. The supreme court further recognized that liberative prescription runs against public agencies unless brought by and in the name of the State itself.

8

*Terrebonne Parish School Board v. Southdown, Inc.*, 03-402 (La.App. 1 Cir. 7/14/04), 887 So.2d 8, involved a suit for damage to Section 16 lands caused by erosion from canals and exploration activities undertaken by individual oil and gas firms for the purpose of mineral exploration and production. Citing *Terrebonne Parish School Board v. Mobil Oil Corp.*, 310 F.3d 870 (5 Cir. 2002), the first circuit held that the State's constitutional immunity in civil matters found in Article 12, § 13 did not apply to the school board when it was not brought by, or in the name of the State.

As recognized in *State v. F.B. Williams Cypress Co.*, 131 La. 62, 58 So. 1033 (1912), *judgment amended on other grounds*, 132 La. 949, 61 So. 988 (1913), title to Section 16 lands has been vested in the State since their donation by Congress for the benefit of public schools. Everything that the State holds in her capacity as trustee is also protected by the State's constitutional immunity from prescription. School boards shall aid the State in its execution of its trust of Section 16 lands.

The federal court has also recently recognized that the State, as owner of Section 16 lands, "has more than a nominal interest in the treatment of Section 16 lands." *Sch. Bd. of Avoyelles Parish*, 647 F.3d at 578.

Just as the Louisiana State Mineral Board was given the right to grant mineral leases on state land by Act 93 of 1936, the school boards were also give the right to grant mineral leases on Section 16 lands, also state land, by Act 100, § 30 of 1922. In *State v. Texas*, 205 La. 417, 425-26, 17 So.2d 569, 572 (1944), the supreme court stated:

> Unquestionably before the passage of Act 93 of 1936 there existed in the state the right to sue or be sued in its own name on matters pertaining to its mineral interests; all suits of that nature then were in the name of the state proper, whether as plaintiff or defendant. The statute, as we appreciate and interpret it, has not divested the sovereign of such right. It is true that the created State Mineral Board was thereby vested with authority to lease any state lands; that it was given full supervision of all mineral leases awarded by the state; and that it was granted the power to institute actions to annul any such lease. But these conferred

9

authorizations were not declared by the Legislature to be exclusive. Neither has the state transferred to the board title to its lands and mineral rights.

The State Mineral Board, by the statute, has been designated merely the agent of the state to supervise and handle that portion of its affairs which deals with the development of its lands for mineral purposes, and to this end the agent is permitted the right, concurrently with the principal (state), to institute actions in nullity. The board may be likened to an agent of an individual property owner who (agent) has been granted full, but not exclusive, authority in the management and supervision of the owner's holdings, with power to bring suits respecting the property. In such case certainly the owner has not precluded himself to institute all necessary actions.

The supreme court further explained that, "the State Mineral Board, by reason of statute creating it, has the right to sue…for the nullity of mineral leases, the state is authorized to maintain this action in its name." *Id.*

In the present case, the VPSB entered into mineral leases as an agent of the State. The VPSB has sued on behalf of the State and makes no claims that it owns the Section 16 lands at issue. Section 16 lands and minerals are owned by the State. The State has a right to sue for underpayment of royalties on Section 16 lands in its own name. The immunity from prescription provision of La.Civ.Code art. 3494(5) clearly applies to "state-owned properties." The VPSB's claims that Defendants have improperly calculated and underpaid royalties on the Section 16 lands mineral leases are not prescribed pursuant to La.R.S. 3494(5) and La.Const. Art. 12, § 13.

Accordingly, the trial court erred in granting Defendants' exceptions of prescription. The judgment of the trial court is vacated and reversed. This case is remanded to the trial court for further proceedings. Costs of this appeal are assessed equally amongst the Defendants.

**REVERSED AND REMANDED.**