hAMY, Judge.
The trial court entered a preliminary injunction, prohibiting the defendant land *927 owner from obstructing passage on a road contained on its property. The court concluded that a right of public passage existed along the roadway. The landowner appeals. For the following reasons, we reverse the entry of the preliminary injunction barring the landowners from restricting public access to the roadway.
Factual and Procedural Background
At issue in this case is whether a right of public passage exists across a parcel of land in LaSalle Parish purchased by the defendant, Kitterlin Creek, L.L.C. The property was purchased by Kitterlin Creek in December 1999, in order to develop a private hunting and fishing club. The Kitterlin Creek property includes Sections 9, 10 and 15, Township 6 North, Range 2 East of LaSalle Parish. These three sections adjoin Section 16. The petition instituting this matter alleges that the State of Louisiana has never divested itself of the ownership of the tract, which was acquired through a federal land grant.[1] The petition alleges that the LaSalle Parish School Board manages Section 16.
The record indicates that the School Board has historically permitted the public to use Section 16, and its water bodies, for recreational purposes. A road, identified as Road 8-P, has provided the public with access from Louisiana Highway 127 to School Board property. According to testimony, Road 8-P has been maintained by the LaSalle Parish Police Jury. The length of that maintenance prior to 1993 is not firmly established in the record. A question also exists as to whether Road 8-P extends in a maintained fashion to the boundary of Section 16 or whether the ^maintained road ends on Kitterlin Creek property. Although the plaintiffs maintain that the Police Jury built the road, evidence in the record does not indicate when the road was built nor does it indicate who built it.
Kitterlin Creek argues that there is no authority for the public to use Road 8-P. It contends that, in its present form, the road allows access to private, Kitterlin Creek property. It asserts that, due to the access, Kitterlin Creek has been subjected to vandalism and unauthorized recreational use of its property. The Police Jury maintains that the public has a right to access the road due to a servitude and right-of-way established in 1955 by Kitter-lin Creek’s ancestor in title. It also contends that the road has been maintained by the Police Jury for an adequate period of time for it to be a public road.
This matter came before the court when Kitterlin Creek placed two gates on Road 8-P in an attempt to limit public access to its property. In May 2002, the State of Louisiana, the LaSalle Parish Police Jury, and the LaSalle Parish School Board (collectively referred to as the “plaintiffs”) filed a petition seeking a temporary restraining order, ordering the defendant to immediately remove the gates from Road 8-P. The temporary restraining order was issued by the trial court. A hearing was set for consideration of a preliminary injunction in the form and substance of the restraining order. On May 20, 2002, Kit-terlin Creek filed a Motion to Dissolve Temporary Restraining Order. In the motion, Kitterlin Creek asserted: “[T]hat La. R.S. 9:1251 prevents any roadways maintained by the LaSalle Parish Police Jury on the property of mover, for access to and from waters for boating or for the purposes of ingress and egress to or from any recreational site from becoming public *928 roads, and cannot cause any loss of private property rights to mover.”
IsFollowing a hearing at which both the preliminary injunction and the motion to dissolve were considered, the trial court granted the preliminary injunction. Kit-terlin Creek appeals, presenting the following issues for review:
1. Does the November 2, 1955 right-of-way, servitude & flowage right grant give to the LaSalle Parish School Board or the LaSalle Parish Police Jury the right to a public road across the property of Kitterlin Creek, L.L.C. to the School Board section, Section 16, Township 6 North, Range 2 East, LaSalle Parish, Louisiana?
2. Does La.R.S. 9:1251 prevent road 8-P from becoming a public road?
3. If road 8-P is a public road, does Kitterlin Creek, L.L.C. have the right to prevent the public from going off the public road, onto its property, including Kitterlin Bay?
Discussion
A party’s request for a preliminary injunction is provided for by La.Code Civ.P. art. 3601, which provides:
An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law; provided, however, that no court shall have jurisdiction to issue, or cause to be issued, any temporary restraining order, preliminary injunction, or permanent injunction against any state department, board or agency, or any officer, administrator or head thereof, or any officer of the State of Louisiana in any suit involving the expenditure of public funds under any statute or law of this state to compel the expenditure of state funds when the director of such department, board or agency, or the governor shall certify that the expenditure of such funds would have the effect of creating a deficit in the funds of said agency or be in violation of the requirements placed upon the expenditure of such funds by the legislature.
During the pendency of an action for an injunction the court may issue a temporary restraining order, a preliminary injunction, or both, except in cases where prohibited, in accordance with the provisions of this Chapter.
Except as otherwise provided by law, an application for injunctive relief shall be by petition.
|4A trial court’s determination as to whether to issue a preliminary injunction is subject to the abuse of discretion standard of review. Smith v. West Virginia Oil & Gas, Co., 373 So.2d 488 (La.1979). See also Jones on Behalf of Cooper v. W.T. Henning Elementary School Principal, 98-470 (La.App. 3 Cir. 10/28/98); 721 So.2d 530.
At issue is whether Road 8-P is subject to public use. See La.Civ.Code art. 457.[2] The Louisiana Supreme Court has acknowledged that the public’s right to use a road may be acquired through purchase, exchange, donation, expropriation, prescription, or dedication. St. Charles Parish School Bd. v. P & L, 95-2571 (La.5/21/96); 674 So.2d 218, citing A.N. Yiannopoulos, PROPERTY § 96 (2 Louisiana *929 Civil Law Treatise 3d ed.1991).[3] While the plaintiffs’ petition instituting this matter could be construed broadly, arguments presented to the trial court indicate that the plaintiffs proceeded under theories that can be identified as two of those listed by the supreme court. First, the plaintiffs argued that the right of public use of Road 8-P was purchased/donated, as demonstrated by a 1955 conveyance. Next, the plaintiffs argued that the right to use the roadway was acquired through dedication. In oral reasons for ruling, the trial court indicated that it found merit in both of these approaches. It discounted an argument that La.R.S. 9:1251, a statute passed after the 1955 conveyance, prevented the road from becoming a public road.[4]
[ BRight-Of-Way, Servitude & Flowage Right
In its first assignment of error, Kitterlin Creek contends that the document relied upon by the plaintiffs in arguing that Road 8-P should be accessible by the public does not create a right of public passage. Further, Kitterlin Creek argues that the document merely grants the Police Jury the right to go upon the property of Urania Lumber Company, Kitterlin Creek’s ancestor in title, for the purpose of constructing a dam. It also contends that a flowage easement was granted for the purpose of raising the water level. Kitter-lin Creek argues that the right-of-way does not provide the Police Jury with a right to build or maintain a public road, nor does it provide the public with the right of access to the property.
The document at issue provides:
RIGHT-OF-WAY, SERVITUDE & FLOWAGE RIGHT GRANT
STATE OF LOUISIANA
PARISH OF LASALLE
WHEREAS, the Department of Public Works, State of Louisiana, has agreed to construct a dam and appurtenances on Walker Lake [and Lehman Lake, Also Kitterlin Lake and Fool’s River][5] in this parish to create a fish and wild life habitat and water conservation facility in |ficonnection with which construction it appears that it will be necessary to use, flood, and inundate all or part of the following described property owned by me in LaSalle Parish, Louisiana; said appurtenances and dams to hold water on said lakes no *930 higher than contour thirty-six (36) mean sea level;
NOW, THEREFORE, I Q.T. Hardt-ner, Jr., a resident of the lawful age of the parish of LaSalle do hereby grant unto the Police Jury of the Parish of LaSalle, its successors and assigns a servitude, right-of-way, and flowage right on, over and across the above described property which servitude, right-of-way and flowage right shall include the right and privilege of entering and going upon said land and bringing thereon such materials, equipment, vehicles and animals as may be necessary in connection with the construction of the said dam and appurtenances and the right and privilege of flooding, inundating, and otherwise causing the said land to be covered by the waters of Walker Lake.
I hereby relinquish unto the said Police Jury for the Parish of LaSalle and unto the Department of Public Works, State of Louisiana, its contractors and employees any and all claims for damages to said property caused by or resulting from the aforesaid constructions.
The consideration of this grant is the benefit which will inure to me as a consequence of the aforesaid construction and the creation of the said facility which will enhance the value of my said land, the sufficiency and the adequacy of which consideration are hereby acknowledged.
IN WITNESS WHEREOF, this instrument is executed on this 2 day of November, 1955.[6]
The rights conferred above do not reference Section 16 nor does it name that property as the beneficiary of a servitude or right-of-way so as to render it a dominant estate. See La.Civ.Code art. 646.[7] The water bodies referenced in the above-document are contained either entirely or, in part, on the land that would be interpreted as the servient estate, that now owned by Kitterlin Creek. Rather, the entirety of the document focuses on a proposed project to flood the area for water 17conservation purposes and the creation of a wildlife/fish habitat. Some testimony indicated that a component of a water control device may exist on Kitterlin Creek property. There is no testimony establishing a connection between the water control device and the proposed flooding project.
The nature of the plaintiffs’ argument regarding the 1955 document indicates that they are seeking acknowledgment of a right-of-way, or servitude of passage for the public. See, e.g., La.Civ.Code art. 705.[8] However, the document conveys a servitude and “right-of-way” only to the La-Salle Parish Police Jury, its successors and assigns, and does so within the context of the proposed dam and flooding project.[9] La.Civ.Code art. 730 instructs that: *931 “Doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate.” The 1955 document is clearly connected to the dam and flooding project. Nowhere in the document does it reference Section 16, the School Board property, nor does it indicate that any servitude or right-of-way is granted in favor of the public. Even if the grant of the servitude was not limited by the context of the document, Article 730 requires that any ambiguity as to the extent of this servitude and right-of-way be interpreted in favor of the land now owned by Kitterlin Creek. Accordingly, we do not find that the document creates a right of passage for the public as urged by the plaintiffs.
1 xLa.R.S. k8:k91 and La.R.S. 9:1251
The plaintiffs also maintain that the Police Jury has maintained Road 8-P “for a sufficient period of time within which to obtain a public right of passage over all lands upon which the road is located.” This argument stems from La.R.S. 48:491, which provides, with some qualification, that roads maintained or worked on for a period of three years become public roads or streets. The Louisiana Supreme Court has described operation of La.R.S. 48:491 as a “tacit dedication.” See St. Charles Parish School Bd., 95-2571; 674 So.2d 218. La.R.S. 48:491 presently provides:
§ 491. Public roads
A. All roads or streets in this state that are opened, laid out, or appointed by virtue of any act of the legislature or by virtue of an order of any parish governing authority in any parish, or any municipal governing authority in any municipality shall be public roads or streets, as the case may be.
B. (l)(a) All roads or streets in this state which have been or hereafter are kept up, maintained, or worked for a period of three years by the authority of a parish governing authority within its parish, or by the authority of a municipal governing authority within its municipality, shall be public roads or streets, as the case may be, if there is actual or constructive knowledge of such work by adjoining landowners exercising reasonable concern over their property.
(b) Actual or constructive knowledge is presumed if prior to or during the public body notifies the last known adjoining landowners of same by written notice by certified or registered mail, return receipt requested. When such notice is given more than two years and ten months from commencement of such work, it shall suspend the foregoing prescription for sixty days.
(c) Actual or constructive knowledge is conclusively presumed within all parishes and municipalities, except as otherwise provided by R.S. 48:491(B)(3), if the total period of such maintenance is four years or more, unless prior thereto and within sixty days of such actual or constructive knowledge, the prescription is interrupted or suspended in any manner provided by law.
(2) When a local governing authority for any reason decides to dispose of any road, street or property used for right-of-way purposes [9which was originally donated to the authority or its ancestors in title, the property shall revert to the original donor or his heirs or assigns. The authority shall notify the donor or his heirs of its intention to donate the property by sending written notice via certified mail, return receipt requested, to the donor or his heirs at his last known address. The notice shall inform the donor or his heirs or his assigns of the authority’s intention to have the land revert and provide him ninety days from receipt in which to respond. If, upon *932 the expiration of the ninety-day period, no response has been received by the authority, it shall dispose of the property in accordance with applicable law. In the donations deed from the authority to the donor or his heirs or his assigns, the authority shall reserve rights of passage for landowners who own property contiguous to the property to be reverted.
(3) In the parish of Vermilion only such maintenance operations are conducted by authority of a parish or municipal governing authority pursuant to a written contract with the landowner which specifies that a private road or street shall not be or become a public road or street.
C. All roads or streets made on the front of their respective tracts of lands by individuals when the lands have their front on any of the rivers or bayous within this state shall be public roads when located outside of municipalities and shall be public streets when located inside of municipalities.
D. Notwithstanding any other provisions of law to the contrary, any road or street used by the public is a public road or street provided it is designated as such by the local governing authority, and it shall be within the discretion of the local governing authority to maintain the road up to a private drive; however, no road or street on private property shall be designated as a public road unless ownership is transferred or the right of way is given to the local governing authority.
The statute has been amended a number of times, with Section B presently containing the requirement of notice prior to dedication of a public road. This inclusion of the notice requirement was made by Acts 1985, No. 480, § 1. Prior to the amendment, no notice was required. However, insofar as it may be viewed as affecting this case, Section 2 of Acts 1985, indicates that: “This Act shall not affect streets or roads the maintenance of which commenced prior to September 1, 1984.” Although the School Board has presented indication of general maintenance for a number of years, the |inmaintenance demonstrated in the record by Police Jury work logs commenced in 1993. There is no proof of when maintenance began and whether the notice requirements of Section B(l) are applicable to this road.[10]
Furthermore, Section D was enacted by Acts 1999, No. 1058, § 1. If there was no designation of the road as public prior to 1999, this Section would also prohibit designation “unless ownership is transferred or the right of way is given to the local governing authority.” As seen above, our review of the 1955 document indicates that it does not convey the type of right-of-way described in Section D. Rather, the conveyance is limited to the water conservation and wildlife habitat project described in the document.
Finally, even if La.R.S. 48:491 was found applicable to this situation, La.R.S. 9:1251 provides:
§ 1251. Passage to or from waters or recreational sites; servitudes or rights of way or passage not acquired.
A. Any other provisions of the laws of this state to the contrary notwithstanding, whenever any land owner voluntarily, whether expressly or tacitly, permits passage through or across his land by certain persons or by the public, solely for the purpose of providing a convenience to such persons or by the public, solely for the purpose of providing a convenience to such persons in the *933 ingress and egress to and from waters for boating, or for the purpose of ingress and egress to and from any recreational site, neither the public nor any person shall thereby acquire a servitude or right of passage, nor shall such passage become a public road or street by reason of upkeep, maintenance, or work performed thereon by any governing authority.
B. The provisions of this sections shall not be construed to:
(1) prohibit land owners from entering into enforceable contracts specifically granting servitudes or rights of way or passage;
ln(2) prohibit land owners from specifically dedicating roads, streets or passages to the public use;
(3) repeal any laws relative to expropriation or appropriation of land or ser-vitudes or laws authorizing the legislature or governing authorities to open, lay out or appoint public roads or streets; nor
(4) repeal any laws creating servi-tudes along rivers, streams or other waters.
(Emphasis added.) Section A is applicable under the present facts as testimony indicates that the public has historically used the road for access to the recreational features of the surrounding property, including Section 16. In fact, it is on that basis that the temporary restraining order and injunction were sought.
The plaintiffs contend that La.R.S. 9:1251 is inapplicable to Road 8-P, due to the presence of Section B(l). It argues that the servitude and right-of-way contained in the 1955 document operate as the type of contract described in Section B(l). As we discussed above, we disagree that the right of passage for the public now sought by the plaintiffs is that conveyed in the 1955 document. We also note that the transcript of the hearing reveals that the trial court observed that La.R.S. 9:1251 did not become effective until 1958, three years after the 1955 document. The court questioned whether Road 8-P may have become a public road by tacit dedication prior to the 1958 enactment of the statute. Again, we note that the plaintiffs presented testimony as to the public’s historic use of the road. However, actual proof of the Police Jury’s maintenance of the road, by way of maintenance logs, extends only to 1993; nor does any testimony satisfactorily establish maintenance prior to 1993.
Due to the inapplicability of the 1955 conveyance of a servitude and right-of-way to the Police Jury and the operation of La.R.S. 9:1251, we conclude that the trial 119court abused its discretion in granting the preliminary injunction sought by the plaintiffs.[11]
DECREE
For the foregoing reasons, the judgment of the trial court granting the preliminary injunction is reversed. Costs of this proceeding, in the amount of $2,588.43, are assigned to the plaintiffs, the State of Louisiana, the LaSalle Parish Police Jury, and the LaSalle Parish School Board. Cf. La. R.S. 13:5112.
REVERSED.

. For general discussion of the federal land grant regarding the Sixteenth Section, see Andrus v. Utah, 446 U.S. 500, 100 S.Ct. 1803, 64 L.Ed.2d 458 (1980) and State v. Humble Oil and Refining Co., 197 So. 140, 195 La. 457 (1940).

. Art. 457. Roads; public or private
A road may be either public or private.
A public road is one that is subject to public use. The public may own the land on which the road is built or merely have the right to use it.
A private road is one that is not subject to public use.

. See also A.N. Yiannopoulos, Property § 96 (2 Louisiana Civil Law Treatise 4th ed.2001).

. In ruling, the trial court stated, in part:
I can just say that as far as I’m concerned, I'm gonna grant the preliminary injunction. The reason being, number one — I believe that Plaintiff's Exhibit 1 gives a continuing right to the police jury to do it. It was done way before the passage of the '58 act. I think that the road obviously has been there a long time. You've got a USGS map — I’m not sure what series it is — y’all can come in and show me that it wasn't there before the passage of the act, then, that's fine. Y'all win on the permanent injunction. But, I grant the preliminary injunction. I recall the rule to dissolve the temporary restraining order. And I deny that request. And, basically, I think it is a public road. Not only do I think it’s a public road, but, I also think there are some private aspects to it, between the State of Louisiana and also the LaSalle Parish Police Jury, which grants them even more access than an ordinary public road would be. And if that ain’t enough, they've been maintaining it for years. I think they have a right to go in there. I think the public has a right to go in there. I think that that right preceded the passage of the Title 9, Section 1251 Act. That’s all I find.

. We note that the bracketed material is contained in the right-of-way document, but appears as a typewritten addition between the applicable lines of the document. We have included brackets merely to signal the lack of uniformity in the typewritten text.

. The document is signed by "Q.T. Hardtner, Jr.” as President of the Urania Lumber Company. It also bears the signatures of two witnesses.

. Article 646 provides that: "A predial servitude is a charge on a servient estate for the benefit of a dominant estate. The two estates must belong to different owners.”

. Article 705 currently provides:
Art. 705. Servitude of passage
The servitude of passage is the right for the benefit of the dominant estate whereby persons, animals, or vehicles are permitted to pass through the servient estate. Unless the title provides otherwise, the extent of the right and the mode of its exercise shall be suitable for the kind of traffic necessary for the reasonable use of the dominant estate.

.The rights granted to the Police Jury relating to the project described in the document are not at issue in this case.

. We also point out that in St. Charles Parish School Board v. P & L, 674 So.2d 218, 222, the supreme court observed that "token maintenance" or an "occasional brushing up" of a road does not qualify as a tacit dedication under La.R.S. 48:491.

. We note that our review is limited to those issues presented and ruled on by the trial court, namely, that regarding the applicability of the 1955 conveyance and operation of La. R.S. 9:1251. While the plaintiffs make broad reference in their brief to this court that Section 16 is landlocked, we do not reach the issue of whether those Civil Code articles related to an enclosed estate are applicable in this situation. Inadequate testimony and argument were presented in the court below for consideration of that issue here.