Dear Secretary Barham,
You have requested an opinion of this Office regarding the applicability of La.R.S. 41:1217.1 and La. 56:30.3 to certain agricultural and hunting leases which have or will soon expire on state owned property commonly referred to as the "White Lake Property".[1] This property, located in Vermillion Parish, encompasses approximately 70,965 acres. Prior to being donated to the State, this property was owned by Amoco Production Company ("Amoco"), and then by British Petroleum American Production Company ("BP") as a result of a corporate merger.
You stated that on January 1, 2002, while the property was still owned by Amoco (prior to the corporate merger with BP), Amoco issued seventeen (17) agricultural and hunting leases to private individuals or entities and that these leases were for a term of ten (10) years. All of the leases will expire later this year (2011).
In July 2002, the White Lake Property was donated to the State of Louisiana by BP.[2] The management of the White Lake Property was placed under the Louisiana Department of *Page 2 
Wildlife and Fisheries ("LDWF") pursuant to Act 613 of the 2004 Regular Session of the Louisiana Legislature.
LDWF is considering releasing the property upon the expiration of the leases of the current leasees. Upon such a release, LDWF would advertise requesting bids for new leases on this property and award the lease to highest responsive and responsible bidder, in accordance with the law governing the leasing of State lands. While bidding out the property would be the general rule, La.R.S. 41:1217.1(B) states that:
 [n]otwithstanding any provision of law to the contrary, if the commissioner or secretary determines there exists a public need to maintain the current lessee, the commissioner or secretary may offer the current lessee, if he made a bid, the option to match the highest bid in order to lease the state lands. The provisions of this Subsection shall not apply to oyster leases, alligator leases, or oil and gas leases entered into by the Department of Wildlife and Fisheries, or to any lease entered into by the State Mineral and Energy Board (emphasis added).[3]
The current agricultural and hunting leases covering the White Lake property were originally leases not with the state but were between private individuals/entities and Amoco (the State's predecessor in title). You ask whether La.R.S. 41:1217.1 applies to leases originally issued by a private party (the State's ancestor in title) but were subsequently assigned or transferred to the State by donation or whether these leases must be treated differently than leases originally granted by the State (when the leases expire and the State considers releasing the property). In other words, is La.R.S. 41:1217.1 limited in its application to only those leases that were originally issued by the State under the public lease law and not to leases that were entered into by private parties but later transferred to the State? Or are the lessees of such assigned or transferred leases considered "current lessees" pursuant to La.R.S. R.S. 41:1217.1 thereby making this provision applicable?[4] *Page 3 
Public Lease Law
The Public Lease Law sets forth the forth the procedures to be followed when public lands are leased.[5] These laws, among other things, set forth the statutorily-required methods for applying to the lease of public lands, advertising and bidding leases of public lands, and the opening and accepting of bids to lease public lands.[6] "The object of the Public Lease Law is to assure that the most advantageous lease possible will be obtained in an atmosphere of secret, competitive bidding."[7] Similarly, in interpreting an earlier version of Louisiana's Public Lease Law, the Supreme Court has stated that:
 [t]he object and intent of the Legislature in adopting Act No. 170 of 1940 was to give all persons a chance to bid on leases of the public lands, to prevent boards and other authorities from favoring one person over others, and to produce to the various agencies of the State named therein larger revenues by requiring competitive bidding for the leases.[8]
Therefore, given the general applicability of Public Lease Law to all leases of public lands and the clear legislative intent for the procedures included in this law, it is our opinion that the White Lake Property, now being "public land" by virtue of the 2002 donation, is subject to all laws in Titles 41 and 56 governing the leasing of State lands.[9]
Statutory Interpretation and Applicability of La.R.S. 41:1217.1 andLa.R.S. 56:30.3
The starting point for the interpretation of any statute is "the language of the statute itself."[10] This language must be considered using the general rules of statutory interpretation set forth in the Louisiana Civil Code and the Louisiana Revised Statutes. *Page 4 
These general rules of statutory interpretation provide the following:
 When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.[11]
 Laws on the same subject matter must be interpreted in reference to each other.[12]
 Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning. The word "shall" is mandatory and the word "may" is permissive.[13]
 When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.[14]
Applying the abovementioned rules of statutory construction it is the opinion of this office that La.R.S. 41:1217.1 and La.R.S. 56:30.3 do apply to the pre-existing agricultural and hunting leases that encumbered the White Lake Property at the time the property was donated to the State. By accepting the donation of the White Lake Property, the State became the lessor of all of the agricultural and hunting leases of the White Lake Property. As such the lessee became a current lessee pursuant to La.R.S.41:1217.1.
As stated above, La.R.S. 41:1217.1(B) states that:
 [n]otwithstanding any provision of law to the contrary, if the commissioner or secretary determines there exists a public need to maintain the current lessee, the commissioner or secretary may offer the current lessee, if he *Page 5 made a bid, the option to match the highest bid in order to lease the state lands (emphasis added).[15]
Both La.R.S. 41:1217.1 and La.R.S. 56:30.3 are clear and unambiguous. Therefore under La.C.C. Art. 9, because the application of these laws does not lead to absurd consequences, the laws shall be applied as written and no further interpretation may be made in search of the intent of the Legislature. The pertinent laws (La.R.S. 41:1217.1 and La.R.S.56:30.3) must be interpreted in reference to the general principles of Louisiana's Public Lease Law. As "[t]he object of the Public Lease Law is to assure that the most advantageous lease possible will be obtained in an atmosphere of secret, competitive bidding"[16] and Public Lease Law gives "all persons a chance to bid on leases of the public lands, to prevent boards and other authorities from favoring one person over others,"[17] it is our opinion that both La.R.S. 41:1217.1 and La.R.S.56:30.3 were intended to provide the commissioner or secretary with the discretionary authority to maintain the current lessee, but only if there is also a finding that there is a public need to maintain the current lessee.
As, the word "may" is permissive, La.R.S. 41:1217.1 and La.R.S. 56:30.3
grant the Secretary of LDWF with the authority to offer the current lessee of any public lands under LDWF's control the "option to match the highest bid," if he determines there is a public need to do so.
The letter of these laws shall not be disregarded under the pretext of considering whether these laws were intended to apply to the "current lessee" or the "current lessee who is leasing property under a lease issued under Public Lease Law." In other words, we consider it of no moment that the "current lessee" obtained his lease from a private party prior to the State's acquisition of the property. Now that the property is State-owned, any leasing of same (once the term of the original lease expires) may be made pursuant to the terms of La.R.S. 41:1217.1 and La.R.S. 56:30.3
CONCLUSION
La.R.S. 41:1217.1 and La.R.S. 56:30.3 are clear, unambiguous, and do not lead to absurd consequences, therefore these laws shall be applied as written and no further interpretation may be made in search of the intent of the legislature. Pursuant to La.R.S. 41:1217.1 and La.R.S. 56:30.3 a lessee of private property subsequently acquired by the *Page 6 
state and whose lease is properly assigned and transferred to the state becomes a current lessee. Furthermore, the Secretary of the Department of Wildlife and Fisheries has the discretionary authority to offer the current lessee, who was an unsuccessful bidder, for a subsequent lease of the property, the option to match the highest bid, if the Secretary determines that there exists a public need to maintain the current lessee, and after proper advertising and bidding the lease in compliance with the Public Lease Law. Since La.R.S. 41:1217.1 and La.R.S. 56:30.3
provide the Secretary of the Department of Wildlife and Fisheries the permissive authority to extend such an offer to the current lessee, it follows that neither La.R.S. 41:1217.1 and La.R.S. 56:30.3 require that the Secretary do so.
We trust this adequately responds to your request. If you should have any questions about the response contained herein, please feel free to contact our office.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 BY: __________________________ DANIEL D. HENRY JR. Assistant Attorney General
 JDC/DDH/jv
[1] Property in Vermillion Parish donated to the State of Louisiana by British Petroleum American Production Co. on July 8, 2002. See La.R.S.56:799.1, et. seq.
[2] This property was donated to the State pursuant to the Act of Donation by BP America Production Company to the State of Louisiana, dated July 8, 2002, and recorded July 11, 2002, in the conveyance records of Vermilion Parish, bearing entry number 20208337, in which property in and around White Lake, located in Vermilion Parish, was donated to the State.
[3] In subsequent communication with this Office you also noted that La.R.S. 56:30.3 contains language nearly identical to La.R.S. 41:1217.1(B). La.R.S. 56:30.3 states:
 (B) Notwithstanding any provision of law to the contrary, if the secretary determines there exists a public need to maintain the current lessee, the secretary may offer the current lessee, if he made a bid, the option to match the highest bid in order to lease the state lands. The provisions of this Subsection shall not apply to oyster leases, oil and gas leases or alligator leases entered into by the department, or to any lease entered into by the State Mineral and Energy Board (emphasis added).
[4] Louisiana Public Lease Law is set forth in La.R.S. 41:1211, etseq.
[5] Id.
[6] La.R.S. 41:1213-1215.
[7] Plantation on the Green, Inc. v. Gamble, 441 So. 2d 299, 304 (La. App. 4 Cir. 1983) writ denied, 443 So. 2d 600 (La. 1983).
[8] Ellis v. Acadia Parish Sch. Bd.,29 So. 2d 461, 465 (1946).
[9] Based upon the convergent language of La.R.S. 41:1217.1 and La.R.S. 56:30.3, we believe that the same principles noted by the courts, supra, apply to public leasing under both statutes.
[10] Touchard v. Williams, 617 So.2d 885, 888 (La. 1993), superseded on other grounds by statute in Dumas v. State ex rel. Dep't of Culture,Recreation Tourism, 02-0563 (La. 10/15/02), 828 So.2d 530; Theriot v.Midland Risk Ins. Co., 95-2895 (La.5/20/97), 694 So.2d 184, 186.
[11] La.C.C. Art. 9.
[12] La.C.C. Art. 13.
[13] La.R.S. 1:3.
[14] La.R.S. 1:4.
[15] While this opinion uses La.R.S. 41:1217.1 for the application of the principles of statutory interpretation, it should be noted that the same analysis applies to La.R.S. 56:30.3 because these two statutes are practically identical.
[16] Plantation on the Green, Inc. v. Gamble, 441 So. 2d 299, 304 (La. App. 4 Cir. 1983) writ denied, 443 So. 2d 600 (La. 1983).
[17] Id.